## CHARLES W. ROBINSON

### *vs.*

## ROCKLAND, THOMASTON AND CAMDEN STREET RAILWAY.

### Knox.    Opinion May 16, 1904.

*Street Railways.    Country Crossings.    Contributory Negligence.    Traveler,*
Bank intervening between him and car.

The conditions of a country crossing of an electric railway in some respects more nearly resemble the crossings of steam railways than they do the situation in city streets, where persons and teams are constantly traveling across and upon the tracks.

If the traveler about to cross the track cannot see an approaching car on account of an intervening bank, he cannot therefore in the exercise of ordinary prudence assume that it is impossible for a car to be behind the bank.

In conditions of known peril, prudent men are vigilant for their own safety; and one who drives into a place of known peril as he would into one of assured safety, doing nothing whatever to safeguard himself or to ascertain if the danger be imminent, does not exercise the measure of ordinary care which the law requires.

Motion by defendant.    New trial granted.

Case for injuries to a traveler on the highway and to his horse and wagon, alleged to have been caused by defendant's negligence.

The plea was the general issue.    The verdict in favor of plaintiff was for $1,116.38.

*L. F. Starrett and L. M. Staples,* for plaintiff.

Counsel contended that the court having decided that there was an issue on the question of contributory negligence, and such issue having been submitted to the jury under proper instructions, their verdict should not be disturbed.    Counsel reviewed exhaustively the testimony and contended that the verdict was fully justified by the evidence.

*O. D. Baker; C. E. and A. S. Littlefield,* for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, POWERS, PEABODY, SPEAR, JJ.

POWERS, J. Action on the case to recover for injuries to the plaintiff and his team received in a collision at Walker's crossing in Thomaston, alleged to have been caused by the negligence of the defendant in the running and management of one of its construction cars on the morning of July 16, 1902. The verdict was for the plaintiff and the defendant moves to set it aside as against evidence.

While the evidence as to the defendant's negligence is very conflicting, yet the jury had the advantage which we cannot have of seeing and hearing the witnesses, and if they believed those of the plaintiff we think they were fairly justified in finding that, in view of the conditions existing at this crossing at the time of the collision, the car was running at such a high rate of speed as was inconsistent with a reasonable regard for the lives and safety of persons having occasion to cross the track at this point.

This brings us to the principal ground relied upon in support of the motion, that the plaintiff was not in the exercise of due care and that such want of due care on his part, contributed directly to cause the injury complained of.

The place where the injury occurred was a country crossing. The car was going from Thomaston to Warren in a general northwesterly direction, and several hundred feet south-easterly of the crossing, the track leaves the side of the road and continues through the fields to, across and beyond the south Warren road. The plaintiff testified that he was traveling along this road in an easterly direction walking his horse, and did not see or hear the approaching car until his horse's feet were on the track and the car itself only about one hundred and forty feet away. Judging it safer to go ahead than attempt to back or turn, he shouted to and struck his horse with the reins; but before he could cross the track the car struck his team. Just before coming to the crossing, the car ran through a cut, the bank of which as it existed at the time of the collision, the plaintiff claimed prevented his seeing more than 140 feet through the cut until his horse was upon the track. The defendant's

witnesses testified that from twenty-five to thirty feet westerly of the track one traveling in the road could see entirely through the cut and many hundred feet up the track, but there was much conflicting evidence at the trial as to whether the bank of this cut had been altered since the accident so as to change the range of vision of one in the plaintiff's position. The hour was about half past five in the morning and the plaintiff knew the conditions existing at this crossing, as he had been over it in a team to his work each morning for several months. He knew that this construction car ran on no regular time, but generally passed along about this hour in the morning for the purpose of carrying the men to their work. He was familiar with the car, the crossing and the track along which the car was approaching. He must have known that it was a place of danger, and he was chargeable with the knowledge that any moment a car might be approaching the crossing although temporarily hidden from his view by the bank.

What did he do to sustain the burden which the law imposes upon him to exercise due care? He says he did not hear the sound of the car or of the gong. Notwithstanding similar negative evidence from some other witnesses, the positive affirmative testimony of numerous witnesses, who testify that they did hear the gong, establishes overwhelmingly that fact that it had been sounded from a distance of several hundred feet southerly of this crossing. Mr. Welt, the plaintiff's father-in-law, was running down the road, shouting and waving his arms in plain sight of the plaintiff who was coming up the road, but the plaintiff neither saw nor heard him until Mr. Welt was within three or four rods of him and immediately before he saw the car. It is not surprising that the plaintiff neither saw nor heard anything to warn him of the approaching car, for he does not claim that he either looked or listened for either sight or sound until Mr. Welt attracted his attention just as his horse was stepping over the first rail of the track. He remained inert and inattentive; he did nothing; he used no one of the senses with which nature had endowed him to protect himself, until his horse's feet were actually between the rails. According to his own testimony he drove into this place of known peril as he would into a place of assured safety, doing noth-

ing whatever to safeguard himself or to ascertain if the danger were imminent, acting precisely as a man would act who had never seen or heard of an electric car or crossing.

There is no absolute rule of law that it is negligence for a person not to look or listen for an approaching car before attempting to cross a street railway; but it may be determined as a matter of fact that in some situations the measure of ordinary care is not fulfilled by a person who crosses without doing either. *Warren* v. *Bangor, Orono & Old Town Railway Co.*, 95 Maine, 115. The conditions of a country crossing of an electric railway in some respects more nearly resemble the crossings of steam railways than they do the situation in the city streets where persons and teams are constantly traveling across and upon the tracks. A greater speed may be reasonable upon the part of the electric car calling for a corresponding increase in vigilance on the part of the traveler. If, as the plaintiff contends, the bank of the cut was such that he could not have seen the approaching car, if he was deprived of the protection of one of his senses, so much the more he was bound to use the one which remained. If it was impossible on account of the bank to see a car, he had no right in the exercise of ordinary prudence to assume that it was impossible for a car to be behind the bank. It is to be noted, however, that he looked for no car until his attention was attracted by Mr. Welt and his horse actually upon the track. If he had listened he must have heard the swish of the electric current, the rumble of the car, the sound of the gong, and the shouting of Mr. Welt. If he had even looked ahead in the direction of the crossing he would have seen Mr. Welt running toward him throwing up his arms, a sufficient warning to a prudent man in approaching a place of known danger.

We are of the opinion that the circumstances would have suggested to a reasonably prudent man that he should either look or listen or do both. The plaintiff did neither. Whether lost in reverie or engrossed in conversation with his companion, or from some other unknown and unexplained cause, he did nothing but drive straight on without paying any attention to the perilous conditions which attached to the crossing of the street railway upon which he was

entering. If this is due care, it would be impossible to define negligence. Prudent men in such conditions of known peril are vigilant for their own safety.

From the plaintiff's own testimony and those facts which are either undisputed or established by the overwhelming weight of evidence, it is clear that the plaintiff failed to exercise that degree of care which common prudence and the law requires, and that such want of care was the proximate cause of his injury.

*Motion sustained. Verdict set aside. New trial granted.*