## BROOKS, ADMINISTRATOR, v. MUNCIE AND PORTLAND TRACTION COMPANY.

[No. 21,880.   Filed October 5, 1911.]

1. RAILROADS.—*Interurban.—Collisions at Highway Crossings.— Contributory Negligence.—Evidence.*—A verdict for defendant, in an action by an administrator against an interurban railroad company for the negligent killing of his decedent at a highway crossing, will not be set aside, on appeal, where the evidence showed that decedent and another driving in a wagon approached a crossing, that the view was obstructed a part of the time as they approached the crossing, that a clear view was obtainable when they came near the track, that they did not stop, look or listen for an approaching car, but drove upon the track, that the motorman failed to sound his whistle between 80 and 100 rods from the crossing, but did, at 60 rods, though it was not heard, and he vainly applied his brake, that another car had preceded the one in question by a few minutes, and that they had seen the first car pass.   p. 300.

2. RAILROADS.— *Interurban.— Crossing Accidents.— Instructions.— "Approximately."*—An instruction that if plaintiff's decedent was negligent in any matter "approximately" contributing to his death, plaintiff cannot recover, is not misleading, the words "proximately" and "approximately" being almost synonymous.   p. 302.

3. RAILROADS.— *Interurban.— Crossing Accidents.— Instructions.— "Materially" Contributing to Injury.*—An instruction that if plaintiff's decedent was negligent in any matter contributing to his injury, plaintiff cannot recover, is not harmful on the ground that it should have charged that such matter must "materially" contribute to his injury, especially where other instructions charged that it must "materially" contribute.   p. 303.

4. RAILROADS.— *Interurban.— Crossings.— Travelers.— Look and Listen Rule.—Instructions.—Presumptions.*—In an action against an interurban railway company, where the evidence showed that as decedent approached a crossing a clear view of the track was obtainable when he came near it, and that he had seen another car pass a few minutes before, an instruction that it is the duty of a traveler approaching an interurban railroad track in the country to look and listen for an approaching car, and that if he could have seen an approaching car in time to escape it will be presumed either that he failed to look, or that he did not heed what he saw, is not erroneous.   pp. 303, 305.

5. RAILROADS.—*Interurban.—Speed.*—The speed of interurban cars in the country is not limited by statute; and such cars may be

run at any speed consistent with the safety of the passengers and freight carried by them. pp. 305, 306.

6. TRIAL.—*Instructions.—Duplication.—*It is not erroneous to refuse to duplicate instructions. pp. 305, 307.

7. RAILROADS.— *Interurban.— Crossing Accidents.—Travelers.—Instructions.—*In an action against an interurban railway company for the negligent killing of plaintiff's decedent at a crossing, an instruction that the negligence of the driver of a vehicle cannot be imputed to a companion when the companion does not control such driver, is properly refused, where the evidence shows without conflict that decedent was driving. p. 306.

8. APPEAL.—*Right Result.—*Where a right result was reached, insubstantial errors in giving and refusing instructions will not cause a reversal. p. 307.

9. COSTS.—*Judgment for.—Administrators.—*In an unsuccessful action by an administrator under §285 Burns 1908, Acts 1899 p. 405, providing that the administrator of a decedent may maintain an action for his death, the damages accruing to the widow or next of kin, for the negligent killing of his decedent, a judgment for costs is properly rendered against him in the capacity in which he sues, such judgment constituting no lien on the assets of his decedent's estate. p. 307.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by George W. Brooks, as administrator of the estate of Sanford L. McKinney, deceased, against the Muncie and Portland Traction Company. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court under §1405 Burns 1908, Acts 1901 p. 590. *Affirmed.*

*George H. Koons,* for appellant.

*Frank H. Snyder, Rollin Warner* and *Whitney E. Smith,* for appellee.

MORRIS, J.—Appellant, as administrator of the estate of Sanford L. McKinney, deceased, instituted this action against appellee, for damages for the alleged negligent killing of his decedent.

There was a trial by jury and a verdict for defendant. A motion for a new trial was overruled, and judgment was rendered for defendant. From this judgment plaintiff appeals.

The errors assigned are the overruling of the motion for a

new trial, and rendering judgment against appellant for costs.

The grounds assigned for a new trial were that the verdict was contrary to law and was not sustained by sufficient evidence, and that the court erred in giving to the jury certain instructions, and in refusing to give certain instructions requested by plaintiff.

Interrogatories, submitted by the court, were answered by the jury, and returned with the general verdict.

The first and second paragraphs of complaint allege that the death of plaintiff's decedent was caused by defendant's negligence; the third paragraph alleges that the death of decedent was caused by injuries wilfully inflicted by defendant's servants.

The errors assigned require this court to determine the sufficiency of the evidence to support the verdict. The following facts are supported by the evidence: In 1. August, 1906, when the fatal accident occurred, defendant was operating an interurban electric railway on its right of way which ran from the northeast to the southwest. The accident occurred at the intersection of defendant's track by a public highway, running north and south. On the east side of the highway there was a corn field, extending south to defendant's right of way. The corn in the field was thick, and about ten feet high, and obstructed the view to the east. The point of the corn field farthest south was about forty feet north of the railway track. The railroad was about three feet higher than the level of the highway, and was ballasted with broken stone, and this broken stone extended about eight feet north of the track. The three feet of incline commenced eight feet north of the track. The corn field extended east 1,400 feet, and north to Caleb Reed's residence. East of the corn field were woods. Caleb Reed lived on the east side of the highway, about four hundred feet north of the crossing. From his residence south to the railway there was a gentle decline. In driving south along

the highway, after passing the corn field, there was nothing to obstruct the view of a car approaching from the east, except wooden trolley-poles, twelve to fifteen inches in diameter and thirty-four feet high, located 100 feet apart, on a line six to seven feet north of the track. These poles did not obstruct the view until the traveler approached to within eight feet of the track, and ceased to obstruct the view of a person within six feet thereof. Decedent was familiar with the crossing. On the afternoon of the accident, decedent and his brother-in-law, Frank H. Young, were riding south on the highway in a spring wagon. Decedent was on the east side of the seat, driving the horse. The horse that drew the wagon was trotting slowly, four or five miles an hour. When the wagon passed the Reed residence, both decedent and Young spoke to Reed. When they were so passing, some pigs ran out of the lot onto the highway, and in front of the wagon. Reed went into the highway, watching the pigs, and observing decedent and Young until the time of the accident. The horse continued in the slow trot, with the pigs running ahead of the vehicle. When the wagon reached the rock ballast, that leads up onto the track, both decedent and Young were leaning forward in the wagon with their heads close together. There was a lunch pail in the wagon. When the wagon was about one hundred feet north of the crossing, Reed saw a car approaching from the east, from four hundred to four hundred fifty feet away. When the wagon started onto the rock, about eight feet north of the rail, Reed shouted a warning to decedent and Young, but the warning was not heard. At that time the horse changed its gait from a trot to a walk. Neither Young nor decedent looked to the east before the accident. The wagon was struck by the approaching car, and decedent was instantly killed. A very short time before the accident, a passenger-car had passed over the crossing, going west. This was observed by Young and decedent, as they approached the crossing. The car that struck decedent was an express-

car, and approached the crossing at a speed of from forty-five to fifty miles an hour. The car was equipped with a whistle, which was sounded when the car was about one thousand feet east of the crossing. The whistle was sounded but the one time during the approach of the car from a point one hundred rods east of the crossing. When about two hundred fifty feet east of the crossing, the motorman saw the horse approaching the crossing, and immediately set the emergency brakes on the car and endeavored to sound the whistle, but failed. When about seventy-five feet from the crossing the motorman shouted, to attract the attention of the occupants of the vehicle. The hearing and eyesight of both decedent and Young were good.

Under the facts proved, we cannot say that the jury was not warranted in finding for defendant, by reason of decedent's contributory negligence. Nor can we say that defendant's negligence, in failing to sound the whistle, at a distance of not more than one hundred, nor less than eighty rods from the crossing, was the proximate cause of the injury. The whistle was sounded when about sixty rods east of the crossing, but was not heard. It is less likely that a sound of the whistle eighty to one hundred rods away would have been heard. The jury found, by answers to proper interrogatories, that the injury to decedent was not wilfully inflicted by defendant's servants. The evidence supports the jury's finding in this particular. The verdict was sufficiently supported by the evidence.

Appellant claims that the court erred in giving the following instruction: "Even though you should find that defendant was negligent as charged in the first and second paragraphs of the amended complaint, yet, if it also appears from a fair preponderance of the evidence, whether from that introduced by the plaintiff or by the defendant, or both, that plaintiff's decedent was also negligent in any matter approximately contributing to his injury, such negligence on his part would defeat his cause

of action stated in those paragraphs, and he could not recover thereon."

The word "approximately" is used in this instruction instead of "proximately." The words, in meaning, are so closely allied that the use of the former, in the construction in which it appears in this instruction, could not have misled the jury, especially in view of other instructions given. *Pledger* v. *Chicago, etc., R. Co.* (1903), 69 Neb. 456, 95 N. W. 1057.

It is further claimed that the instruction was erroneous because the court failed to charge the jury that such negligence of plaintiff must "materially" contribute to his injury. In support of this contention, appellant cited *Indianapolis, etc., Transit Co.* v. *Edwards* (1905), 36 Ind. App. 202. Conceding the correctness of appellant's claim, the omission is harmless. In instruction five, given by the court, the jury was told plaintiff's right of recovery would not be defeated "unless you should believe from the evidence that the plaintiff's decedent was guilty of contributory negligence which materially contributed to his injuries." The jury was likewise instructed in the thirteenth, twenty-second and thirty-sixth instructions given by the court.

In its twenty-fifth instruction the court told the jury that it was the duty of a traveler, about to cross a railroad track, to listen for signals, and to look up and down the track; that if a person could have seen an approaching car in time to escape, it will be presumed, in case of injury, either that he did not look, or, if he did, that he did not heed what he saw. This instruction is vigorously assailed by counsel for appellant, who contends that the "look and listen" rule, adopted generally by the courts in railroad-crossing cases, has no place in actions for accidents occurring at crossings of interurban railroads with country highways; that electric cars are light and easily controlled; that the same company usually, as in this case, occupies the streets of

cities and towns, and there operates a street railway; that an interurban railway, in its operation, resembles a street railway, and the same rule should be applied to it as applies to street railways in cities. It has been held by our courts, and generally by the courts of other states, that the rule in steam railroad crossing cases is not fully applicable to crossing accidents on street railways in towns and cities. *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490; *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 167 Ind. 402, 7 L. R. A. (N. S.) 143; *Indianapolis St. R. Co.* v. *Schmidt* (1905), 35 Ind. App. 202; 36 Cyc. 1539; *Pilmer* v. *Boise Traction Co.* (1908), 14 Idaho 327, 94 Pac. 432, 15 L. R. A. (N. S.) 254.

The defendant was operating an electric railway between Muncie and Portland, and in each of the cities ran its cars over some of the streets thereof. Every hour of each day, from 5 o'clock a. m. to 11 o'clock p. m., a passenger-car started from each of the cities destined for the other. Said cars weighed about thirty tons, and were fourteen feet high. Between the two cities the defendant operated an express-car, which made two round trips each day. The car that collided with plaintiff's decedent was forty-five feet long, fourteen feet high, weighed thirty-two tons, had seventy-five-horsepower motors, was equipped with whistle, gong and Westinghouse air-brakes, and was propelled by electricity transmitted through an overhead trolley. The car was geared to run at a speed of from fifty to fifty-five miles an hour. The accident happened in the daytime, on defendant's private right of way, in the country, about four miles northeast of Muncie. At that point, running at a speed of ten miles an hour, the car could, under ordinary conditions, have been stopped within forty feet; at a speed of twenty-five miles an hour, within about three hundred feet, and at a speed of from forty-five to fifty miles an hour, within about four hundred fifty feet.

Electric interurban railroads, used to transport passengers and property, are authorized by our laws. §5675 Burns 1908, Acts 1903 p. 92, §1. Such companies have been

5. accorded practically the same rights, and have been subjected to the same restrictions, as steam railroad companies. The General Assembly has not seen fit to limit the speed of their cars, while running through the country.

The momentum of an electric car, weighing thirty tons, running at a speed of forty-five to fifty miles an hour, is not so great as that of the ordinary freight or pas-

4. senger train running on a steam road at a lower rate of speed; but it is such that the danger to the traveler on the highway crossing is practically as great in the one case as in the other, and we see no reason why the "look and listen" rule, applied almost universally to accidents at steam road crossings, should not apply to the facts in issue here, and in our opinion the lower court did not err in its twenty-fifth instruction. *Cable* v. *Spokane, etc., R. Co.* (1908), 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224; *Phillips* v. *Washington, etc., R. Co.* (1906), 104 Md. 455, 65 Atl. 422; *Robinson* v. *Rockland, etc., St. Railway* (1904), 99 Me. 47, 58 Atl. 57; *Folkmire* v. *Michigan United R. Co.* (1909), 157 Mich. 159, 121 N. W. 811; *Heitman* v. *Pacific Electric R. Co.* (1909), 10 Cal. App. 397, 102 Pac. 15.

It does not follow that in all cases, and under all conditions, the crossing of an interurban electric railway is to be governed by the rules applied to steam railways, but the rule in controversy is applicable to the situation here considered.

Plaintiff requested an instruction informing the jury that contributory negligence was not a defense to the third paragraph of complaint, which alleged a wilful injury.

6. Error is predicated on the court's refusal to give the instruction. The point was covered in instruction thirty-nine, given, wherein the court informed the jury that

"contributory negligence is not a defense to an action for wilful injury or wilful killing."

Appellant requested certain instructions, informing the jury, in substance, that the negligence of a driver of a vehicle, in which a companion is riding, cannot be imputed to the companion, when he does not control the actions of the driver. Assuming the correctness of these instructions as abstract propositions of law, the court rightfully refused to give them because they were not applicable to the facts. The evidence shows beyond controversy that decedent was driving.

Instruction twenty-seven, given by the court, is as follows: "I instruct you that there is no statute regulating the rate of speed at which an interurban car, or an electric traction car, may pass over a highway crossing in the country, and it is not negligence, in itself, for such cars to be run over highway crossings in the country at any rate of speed consistent with the safety of the persons and property carried on such cars." Appellant's counsel asserts that this was erroneous.

In the case of Lake Shore, etc., R. Co. v. Barnes (1906), 166 Ind. 7, 3 L. R. A. (N. S.) 778, this court held that it was not negligence per se to run a train over an ordinary country highway crossing at any speed consistent with the safety of the persons and things being carried. It is generally held that, in the absence of statutory regulations, a railway company may use its discretion in establishing the speed of its trains. 33 Cyc. 971. This does not excuse it from the common-law duty of exercising care for the safety of persons traveling on highways crossing its tracks; and the rate of speed to be used in a given case depends on the nature of the crossing, and other circumstances surrounding the alleged injury.

The instruction given was not erroneous, coupled as it was with other instructions that left to the jury the right to determine whether defendant exercised reasonable care

and prudence, under the particular circumstances of the case, in running the car at the speed shown by the evidence.

Appellant complains of the action of the court in refusing to give other instructions requested. It is sufficient to say that such of these as were applicable to the evidence were substantially covered by other instructions given.

6.

There were objections to other instructions given by the court, not discussed in the opinion, but we are of the opinion that the court committed no error harmful to appellant. Besides, the verdict of the jury is clearly right under the evidence, and if any errors were committed in instructing the jury, they did not affect any substantial right of appellant, and, in such case, intervening errors, if any, should be disregarded. §§407, 700 Burns 1908, §§398, 658 R. S. 1881; *Terre Haute, etc., R. Co.* v. *Salmon* (1905), 34 Ind. App. 564.

8.

The judgment rendered was as follows: "It is therefore considered by the court that plaintiff take nothing by his action herein, and that defendant have and recover of and from the plaintiff its costs in this behalf laid out and expended, taxed at $——." Appellant asserts that decedent's estate has no interest whatever in the result of the suit, that the assets thereof are not liable for costs, and that a judgment cannot be properly rendered against the estate for such costs.

This action was brought under §285 Burns 1908, Acts 1899 p. 405, by the administrator, for the exclusive benefit of decedent's widow. The judgment is not a lien on the assets of decedent's estate, but is against the plaintiff suing in the capacity provided for in §285, *supra.*

9.

*Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95. There is no error. Judgment affirmed.