## INDIANAPOLIS AND CINCINNATI TRACTION COMPANY
## *v.* ROACH.

[No. 23,763. Filed May 10, 1922. Rehearing denied October 10, 1922.]

1. NEGLIGENCE.—*Contributory Negligence.—Questions for Jury.* —As a general rule, the question whether one is guilty of negligence or contributory negligence is a question of fact to be determined by the jury. p. 388.

2. NEGLIGENCE.—*Contributory Negligence.—Burden of Proof.*— In an action for personal injuries, the burden is upon the plaintiff to prove negligence and upon the defendant to establish contributory negligence, and, if there is no evidence upon the subject of contributory negligence, the finding must be for plaintiff upon that issue. p. 388.

3. RAILROADS.—*Crossing Accidents.—Negligence.—Contributory Negligence.—Presumptions.*—Where a traveler on the highway is injured at a railroad crossing, there is no presumption, in the absence of evidence, either for or against negligence on the part of the railway or contributory negligence on the part of the traveler. p. 389.

4. NEGLIGENCE.—*Contributory Negligence.—Questions for Court and Jury.*—If there is any dispute as to the controlling facts

on the question of contributory negligence, and if there is any room for different conclusions by reasonable men, the question of contributory negligence is one of fact for the jury, and it is only where the controlling facts are not in dispute and are susceptible of but one conclusion upon the part of reasonable men that the question becomes a question of law for the court. p. 389.

5. RAILROADS. — *Crossing Accidents.* — *Jury Questions.* — *Contributory Negligence.* — In an action against an interurban railroad company for injuries sustained by a passenger in an automobile struck by a car on a highway crossing, the question of contributory negligence *held* for the jury under the evidence. p. 393.

6. TRIAL.— *Instructions.*— *Omissions.*— *Supplying by Other Instructions.*— *Contributory Negligence.*— *Proximate Cause.*— In an action for personal injuries, an instruction that, to enable plaintiff to recover, it must be shown by a preponderance of the evidence that defendant was guilty of the negligence charged in the complaint, was not erroneous because it omitted the elements of contributory negligence and of proximate cause, where those questions were fully covered by other instructions given. p. 393.

7. TRIAL.— *Directory Instructions.*— *Negligence.*— In an action for personal injuries, an instruction that, to entitle plaintiff to recover, it must be shown by a preponderance of the evidence that plaintiff was guilty of the negligence alleged, is not a directory instruction. p. 394.

8. TRIAL.—*Instructions.*—*Consideration as a Whole.*—In determining whether a particular instruction is reversible error, the instructions as a whole must be considered with reference to each other and as an entirety. p. 394.

9. RAILROADS.— *Crossing Accidents.*— *Injury to Passenger in Automobile.*—*Instructions.*—*Passenger's Duty.*—*Negligence of Driver.*—In an action against an interurban railroad company for injuries to a passenger in an automobile in collision with a car on a highway crossing, an instruction that the negligence of the driver of the automobile is not imputed or chargeable to plaintiff, was not erroneous, as informing the jury unconditionally that plaintiff was not chargeable with the negligence of the driver and that his negligence could not be imputed to her, when considered in connection with other instructions that it was the duty of plaintiff to ascertain for herself whether an interurban car was approaching and to use the care and caution of a person of ordinary prudence under the

circumstances, and that if she were contributarily negligent she could not recover.    p. 395.

10. RAILROADS. — *Crossing Accidents.* — *Negligence.* — *Instructions.—Speed of Car.*—In an action against an interurban railroad company for injuries sustained by plaintiff when an automobile in which she was riding as a passenger was struck by a car on a highway crossing, an instruction that there is no statute limiting the rate of speed at which an interurban car may be run, but if the jury should find that the car in question was running at a speed which was dangerous to persons using the highway crossing, and that it was negligence to operate the car at the speed it was running when and where the accident occurred, and that such speed was the proximate cause of the injuries to plaintiff, the jury could find for her, was not erroneous as charging the motorman operating the car with knowledge of circumstances which he could not have known by the exercise of ordinary care, where the evidence showed that both the motorman and conductor were familiar with the conditions surrounding the crossing, since it must be assumed that the jury considered the instruction with reference to the evidence as to such conditions; and such instruction was not misleading, where other instructions defined negligence as the doing or omission of some act which an ordinarily prudent person under similar circumstances would not have done or omitted, and that the motorman in charge of an electric car approaching a crossing had a right to assume that a person on the highway would use reasonable care.    p. 396.

11. TRIAL.— *Instructions.— Assumption of Negligence.*— In an action against an interurban railroad company for injuries to a passenger in an automobile struck by a car on a highway crossing, an instruction that plaintiff had a right to assume that defendant would perform its duty of giving warning of the approach of its car to the crossing by sounding the whistle, but that failure to give such warning did not relieve plaintiff from exercising ordinary care, was not erroneous as assuming that there was a failure to sound the whistle, where other instructions submitted to the jury the question whether the whistle was blown.    p. 398.

12. TRIAL.— *Contributory Negligence.— Instructions.— Assumption of Negligence.*—In an action for personal injuries, an instruction that there was no such thing as comparative negligence, and that, although the defendant may have been guilty of negligence, if plaintiff did not exercise reasonable care to protect herself from danger, she could not recover, if such failure proximately contributed to her injuries, was not

erroneous as assuming that defendant was negligent where other instructions required plaintiff to prove by a fair preponderance of the evidence that defendant was guilty of the negligence charged, and stated that negligence could not be assumed from the mere fact that an accident occurred. p. 399.

13. APPEAL.—*Review.*—*Verdict.*—*Personal Injuries.*—*Excessive Damages.*—A verdict in an action for personal injuries will not be set aside on the ground that the damages awarded are excessive unless the amount fixed by the jury is so large that it cannot be explained on any reasonable hypothesis other than prejudice, passion, partiality, corruption, or that some improper element was taken into consideration. p. 400.

14. DAMAGES.—*Personal Injuries.*—*Excessive Damages.*—Where plaintiff, who was a passenger in an automobile struck on a highway crossing by an interurban car, was severely injured about the head and face, so that she was temporarily blinded and her face scarred, and also suffered a broken and mashed arm, and a wrenched and sprained back, etc., a verdict awarding $10,000 damages will not be set aside as excessive. p. 401.

From Marion Superior Court (A4,269); *W. W. Thornton*, Judge.

Action by Annie Roach against the Indianapolis and Cincinnati Traction Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Joseph R. Morgan, Kittenger & Diven* and *Donald L. Smith,* for appellant.

*Clifford C. Kealing* and *Robert R. Dalton,* for appellee.

WILLOUGHBY, J.—Appellee instituted this action against the appellant to recover damages for personal injuries sustained by her in a collision between one of appellant's interurban cars and the automobile in which the appellee was riding. The collision occurred November 25, 1917, at about 8 o'clock in the evening, at what is known as Stop 16, which is located about two miles west of Morristown.

The injury was alleged to have been caused by the negligence of appellant in the management of said interurban car; the negligence alleged being the failure to sound the whistle on said car at a distance of not

less than eighty nor more than 100 rods from said crossing, and excessive speed in passing over said crossing.

The complaint is in one paragraph and was answered by general denial. The cause was tried by a jury and a verdict was returned in favor of appellee, in the sum of $10,000.

Judgment was rendered on the verdict on December 18, 1919, in the sum of $10,000, and interest from December 10, 1919, the date of the return of said verdict, together with costs. Appellant filed its motion for a new trial, which was overruled and appellant excepted and appealed from the judgment rendered.

The only error assigned and not waived is that the Marion Superior Court erred in overruling appellant's motion for a new trial. · The specifications of such motion presented in appellant's brief are: The verdict of the jury is not sustained by sufficient evidence; the verdict of the jury is contrary to law; the damages assessed by the jury are excessive; the court erred in giving of its own motion instructions numbered 4, 13, 14, 16 and 22.

Appellant claims that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. Its exact contention is that the evidence affirmatively shows that appellee was guilty of contributory negligence. The general rule is that the question whether or not one is guilty of negligence or contributory negligence is a question of fact to be determined by the jury trying the cause.

The burden is upon the plaintiff to prove negligence and upon the defendant to prove contributory negligence on the part of the plaintiff. The law is that if there is no evidence on the subject of contributory negligence of the plaintiff, the finding must be for the plaintiff on that issue.

If a traveler is injured at a railroad crossing there

is no presumption, in the absence of evidence, either for or against negligence. The traveler is not aided 3. by a presumption of freedom from fault, nor the railway by a presumption of contributory negligence. It is simply a failure of proof upon the part of the railway as to an issue, the burden of showing which is by statute cast upon it.

In the *City of Indianapolis* v. *Keeley* (1906), 167 Ind. 516, 79 N. E. 499, it is held that where contributory negligence is relied upon in personal injury cases, each party charged the other with negligence under the issues joined, and the alleged negligence of each was a matter for the determination of the jury from all the facts and circumstances given in evidence, unaided by any presumption of law in favor of or against either party.

If there is any dispute as to the controlling facts on the question of contributory negligence, and if there is any room for different conclusions by reasonable 4. men, then the question of contributory negligence is one of fact for the jury. *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697, 88 N. E. 612; *Beuhner Chair Co.* v. *Feulner* (1905), 164 Ind. 368, 73 N. E. 816; *Lake Erie, etc., R. Co.* v. *McFarren* (1919), 188 Ind. 113, 122 N. E. 330.

It is only where there is no dispute as to the controlling facts and no room for different conclusions upon the part of reasonable minds as to the question of contributory negligence, that it becomes a question of law for the court.

The evidence shows that the plaintiff was riding in an automobile on the night of the accident as an invited guest; that she exercised no control over the operation of the car; that she was wholly unacquainted with the crossing and the surrounding country; that the automobile in which she was riding was being driven

northward along the public highway that intersects with the interurban track at "Stop 16" at approximately right angles; that the interurban track is set in a cut at "Stop 16;" that to the east of the public highway and to the south of the interurban track there is a hill; the hill extends back to the east along the interurban track 1,080 feet; that the slope of the hill is within seven to nine feet south of the interurban track; that the hill at the highest point is about eight feet higher than the level of the public highway at the crossing; that on top of the hill there is a dwelling house, a number of out-buildings, trees, shrubbery and some weeds; that down towards the crossing and running south along the slope of the embankment there was located a fence and one or two anchor posts; that this hill and embankment and buildings, trees, fence, etc., obstructed the view of a traveler moving northwardly along the public high-way at and near the crossing; it was a dark night and there was no light at the crossing; that one riding in an automobile would have to bring his automobile almost to the tracks before he could have a clear view of the track towards the east and that seven feet from the crossing a view 150 feet east on the tracks could be had; that on the night in question this plaintiff, riding as a guest in said automobile, approached the interurban crossing, and the driver of the car stopped the machine fifteen feet from the south rail of the track; that the driver of the car and the plaintiff looked and listened for approaching cars from the east; that they neither heard nor saw a car approaching; that the appellee looked again toward the east when the automobile start-ed; that she did not have time again to look and the next thing she knew was the light of the car, the crash and collision, which all occurred almost at the same in-stant.

That the interurban was being driven over the cross-

ing at a speed of fifty to sixty miles per hour; that the servants in charge of the appellant's car failed to give any warning of the approach of said car. The head-light on top of the car was lighted. The speed of the interurban car, approximately fifty-five miles per hour, made it possible for the car to move every ten seconds approximately eight hundred and seven feet. It is very probable that from the time of the starting of the automobile, considering the necessary shifting of gears, that fully ten to fifteen seconds lapsed before it had reached the crossing.

The evidence pertaining to conditions at the crossing is not without contradiction. Appellee denies that a full view of the crossing could be had from a point fifteen feet south of the crossing, while appellant contends that one could see an interurban car approaching from a distance of fourteen or fifteen feet south of the south rail, 1,000 feet and could see the headlight almost 2,000 feet. A witness testified that he had lived in the neighborhood of the crossing ten years and that he had made observations to determine how far a car approaching the crossing from the east could be seen from the public highway; that at a point fifteen feet from the crossing no clear view of the track east could be had; and that a point seven feet from the crossing a view of but 150 feet to the east could be had. His testimony described in detail the surroundings of the crossing and the obstructions to the view to the east.

Another witness testified that standing back from the crossing seven feet from the track you could see a car a couple hundred feet. He also testified in detail as to the surroundings of the crossing. On top of the hill and to the east of the public highway there were a number of trees, a dwelling house, three or four outbuildings, shrubbery and undergrowth. Running alongside the hill to the south of the interurban track and east of the

public highway was a board fence. It began two feet south of the interurban tracks and ran alongside the hill to the top near the public highway; the fence was five feet high. The trees were thirty in number; there were three rows and the first row was five or six feet back from the top of the bank. The shrubbery and undergrowth on top of the hill was very thick. The anchor posts were located right on top of the hill where the fence ran up. They were from fourteen to eighteen inches wide and about five feet high. At the time of the accident one proceeding north and approaching the crossing would have to get within seven or eight feet of the south rail at the crossing before a view of any distance could be had. Seven or eight feet from the rail a view of 150 feet to the east could be had. The fence, the embankment, the anchor posts, the weeds and undergrowth all were obstructions to the view from the public highway.

On the night of the accident, the plaintiff, riding as the guest of one John Michael, approached the crossing from the south. It was the first time the plaintiff had ridden in an automobile and the first time that she had visited that section of the state. She had no knowledge or acquaintance with the surrounding country and knew nothing of the conditions governing the crossing. John Michael drove the car as it approached the crossing; the plaintiff was riding in the right front seat of the machine. When the automobile approached within fifteen feet of the south rail of the interurban tracks, the driver brought the car to a full stop. Both she and the driver looked and listened for approaching cars or trains. They neither heard nor saw an approaching car. She did not look again until they were on the track when she saw the light of the car, heard the whistle of the car and heard the crash, all about the same time.

The evidence in regard to conditions at the crossing

was conflicting and the court cannot say that the plaintiff did not act as an ordinarily prudent person at the time of the accident. The facts as shown by the evidence are not such that ordinarily prudent men could reach but one conclusion, and that conclusion that the plaintiff was guilty of contributory negligence. Upon the evidence the question of contributory negligence was clearly for the jury.

Appellant alleges that instruction No. 4, given by the court of its own motion, directs a verdict and wholly fails to include the element of freedom from contributory negligence. Instruction No. 4 is as follows:

"The mere fact that two persons were killed and the plaintiff injured while crossing the defendant's tracks on the occasion alleged in the complaint will not justify you in finding that the defendant was guilty of the alleged negligence in the complaint, and that alone will not entitle her to recover. To enable her to recover it must be shown by a preponderance of the evidence that the defendant was guilty of the alleged negligence described in the complaint."

This instruction No. 4 is in substantially the same language as instruction No. 5, tendered by the defendant and refused by the court to be given, except the following clause: "To enable her to recover it must be shown by a preponderance of the evidence that the defendant was guilty of the alleged negligence described in the complaint."

The objection made by appellant that this instruction fails to include the element of freedom from contributory negligence and entirely omits the element of proximate cause is not well taken because instruction No. 2, given by the court of its own motion informs the jury that before the plaintiff is entitled to recover she must establish by a fair preponderance of the evidence, each

of the following propositions: First, that she has sustained the injuries or some part thereof, as alleged in the complaint; that the defendant was negligent in the manner as alleged in the complaint and that this negligence was the .proximate cause of such injuries; that the plaintiff has sustained loss and damages by reason of her injuries, as alleged in the complaint.

If the plaintiff has failed to establish any of these propositions, she will not be entitled to recover in this action. Said instruction further states that if· plaintiff was guilty of contributory negligence proximately contributing to the injuries complained of, she would not be entitled to recover.

In instruction No. 3, given by the court of its own motion, the jury are told that negligence on the part of the defendant will not be presumed from the mere fact that an accident has happened; nor is there any presumption that the injuries complained of were the proximate result of negligence on the part of the defendant, if any there was; on the contrary plaintiff, in order to recover, must establish the negligence of which she alleges the defendant was guilty and that such alleged negligence was the proximate cause of the injuries of which she complained.

Instruction No. 4 is supplemented by instructions Nos. 2 and 3, given by the court of its own motion, and is therefore not open to the objections urged against it by appellant.

The appellant is in error in saying that instruction No. 4 directs a verdict. See, *Indianapolis Traction, etc., Co.* v. *Holtsclaw* (1907), 41 Ind. App. 520, 82 N. E. 986. In considering this instruction and the other instructions complained of by appellant it must be borne in mind that in determining whether or not a particular instruction is reversible error, the instructions as a whole must be considered with reference

to each other and as an entirety. *Indianapolis Traction, etc., Co.* v. *Thornburg* (1920), 74 Ind. App. 642, 125 N. E. 57; *Shields* v. *State* (1897), 149 Ind. 395, 49 N. E. 351.

Appellant also claims that instruction No. 13 is erroneous, in that it charges the jury unconditionally that appellee was not chargeable with the negligence of the driver and that his negligence could not be imputed to her. Instruction No. 13 is as follows:

9.

"The fact, as claimed, that the driver of the automobile in which the plaintiff was riding at the time of the accident was negligent in driving it will not render her chargeable with negligence. In other words, the negligence of the driver is not to be imputed to her or chargeable to her; but, notwithstanding this rule, it was as much her duty to use reasonable care and caution to learn of and avoid danger as it was the duty of the driver, and if she discovered the approaching car to warn him as soon as she saw it was dangerously near, unless she saw or knew he was fully conscious of its approach."

This instruction is aided and supplemented by instructions Nos. 10 and 8, given by the court of its own motion.

In instruction No. 10 the jury were told that it was the duty of the plaintiff while riding in the automobile on a public highway to realize and have in mind that she was approaching danger and to ascertain for herself whether a car was approaching; if her view was obstructed then it was her duty to be all the more careful and use her sense of hearing. The law required her to use that degree of care and caution that a person of ordinary prudence and intelligence would be presumed to use under similar circumstances.

In instruction No. 8 the jury were told that—"If you

find the plaintiff was guilty of contributory negligence proximately contributing to her alleged injuries, the verdict should be for the defendant. If you find neither party was guilty of negligence then your verdict should be for the defendant."

Instruction No. 13, when taken in connection with other instructions given, was not erroneous.

Appellant claims that instruction No. 14 is erroneous and harmful because it charges appellant with a duty based on circumstances of which it could not learn by use of ordinary care. Said instruction is as follows:

"It is charged in the complaint that the defendant was running its interurban car at an unlawful rate of speed. There is no statute in this state that limits the rate of speed at which an interurban car may be run, but, notwithstanding that fact, if you should find that the car was running at a rate of speed which was dangerous to persons using this highway crossing, and you should also find that it was an act of negligence to run the car at the rate of speed it was running when and where the accident occurred, as alleged in the complaint, and that such rate of speed was the proximate cause of the injuries to the plaintiff, then you will find for the plaintiff if she herself was free from negligence materially contributing to her injury. In other words, the rate of speed of an interurban car must be regulated at a crossing by the conditions surrounding that crossing at the time."

It appears from the evidence of the motorman in charge of the car that he had been motorman for the Indianapolis and Cincinnati Traction Company since November 15, 1910. That he ran on the Shelbyville line to Greensburg and through Morristown and Rushville and Connersville, during practically all of that time. The conductor of the car had been conductor on this line for

six years and passed this crossing twice a day during all that time and he in his testimony says he was familiar with the conditions surrounding the crossing.

It thus appears from the evidence that the conductor and motorman were both familiar with the conditions surrounding the crossing and had been for at least six years and nothing appears in the evidence to show that conditions there were any different on the night of this accident.

It must be assumed that the jury considered that instruction with reference to evidence introduced in the case which would indicate that all these conditions and surroundings which were present at the time of the accident on November 25, 1917, could have been known to such motorman and conductor by the use of ordinary care.

Instruction No. 6, given by the court of its own motion is as follows:

"The gist of the complaint herein is the alleged negligence of the defendant, which it is charged was the proximate cause of plaintiff's injuries. If the defendant was not negligent as alleged, then there can be no recovery against it. The term 'negligence' may be briefly defined as the doing of some act or thing which an ordinarily prudent person under similar circumstances surrounding the transaction under investigation would not have done, or the failure to do some act or thing which an ordinarily prudent person under similar circumstances surrounding the transaction under investigation would have done. Reasonable care or ordinary care is that degree of care which an ordinarily prudent person similarly situated, would have exercised under the circumstances surrounding the transaction under investigation."

In instruction No. 21, given by the court of its own motion, the jury are told that the motorman in charge

of an electric car in approaching a highway crossing has the right to presume that any person on or near such crossing will use reasonable care to keep off such crossing when the car is approaching in close proximity to it and he may continue to indulge in such presumption until it becomes apparent that such person is not using such care. With these instructions, Nos. 6 and 21, supplementing instruction No. 14, it could not have been misunderstood by the jury and was correct as applied to the facts as shown by the evidence.

Appellant claims that instruction No. 16 is erroneous because it says that said instruction assumed that appellant failed to sound the whistle on its car as it 11. approached the crossing. Said instruction is as follows:

"Plaintiff, while traveling upon the public highway approaching the defendant's track at such crossing, and in entering thereupon for the purpose of crossing the railroad track, had a right to assume that the defendant would perform its duty of giving warning of the approach of its car to the crossing by sounding the whistle on its car, yet failure to give such warning did not relieve the plaintiff from exercising ordinary care in approaching such track at the crossing and entering upon it."

An examination of instructions Nos. 15 and 23, show that the jury could not have understood such instruction No. 16 to assume that appellant failed to sound the whistle upon its car as it approached the crossing. Instruction No. 15 is as follows:

"In the complaint the plaintiff has alleged that the defendant failed and neglected to sound the whistle of the car at a point not less than eighty nor more than 100 rods before reaching the highway crossing and coming into contact with the automobile in which she was

riding. If the whistle was blown within that distance of the crossing, or if it is not shown by a preponderance of the evidence that it was not so blown, then upon that charge of negligence you will find for the defendant."

Appellant claims that instruction No. 22 is erroneous in that it assumes the defendant negligent as charged in the complaint. Instruction No. 22 is as follows:

"Under the law of this state in a case of this kind there is no such thing as comparative negligence, that is, the law does not permit you in arriving at your verdict to compare the negligence of the defendant, or its employes, with the alleged negligence of the plaintiff; for in this state the law is that although the defendant, or its employes, may have been guilty of negligence in running the car in question, yet if you find from a preponderance of the evidence that the plaintiff did not herself exercise reasonable care to protect herself from danger as she was required to exercise, as in these instructions defined, and if by such failure she proximately contributed to her injuries, then she cannot recover, and your verdict should be for the defendant, notwithstanding the negligence of the defendant or its employes."

In instruction No. 2 the jury are told that before the plaintiff could recover she must establish by a fair preponderance of all the evidence in the cause that the defendant was negligent as charged in the complaint and that this negligence was the proximate cause of such injury.

Instruction No. 3, given by the court of its own motion, is to the same effect and in addition says that the negligence on the part of the defendant will not be presumed from the mere fact that an accident occurred and, in order to recover, the plaintiff must establish by

a fair preponderance of the evidence that the defendant was negligent and that such alleged negligence was the proximate cause of the injuries of which she complained.

Instruction No. 22, when taken in connection with the other instructions given in the case, is not erroneous, and could not have misled the jury.

In *Indianapolis Traction, etc., Co.* v. *Thornburg, supra,* the court in the discussion of instructions says: "The instructions must be considered as an entirety. In reality there is but one instruction, one charge, given to the jury.   But because of the serial nature of thought and expression, the charge necessarily must consist of several paragraphs each of which is devoted to some particular feature of the case; and it is for convenience only that these paragraphs are numbered and designated as separate instructions.   No instruction is to be regarded as independent and isolated, but rather as a related and connected part of the entire charge.   The rule is that error in a particular instruction will not justify a reversal unless it be of such a nature as to vitiate the whole charge.   The entire charge is vitiated only when it is so erroneous that the jurors must have been misled as to the law of the case."

Appellant insists that the damages assessed by the jury are excessive.   In order to sustain appellant's contention we would be required to hold that the amount fixed by the jury ($10,000) is so large that it cannot be explained on any reasonable hypothesis other than from prejudice, passion, partiality, corruption, or that some improper element was taken into account. *Citizens Tel. Co.* v. *Prickett* (1919), 189 Ind. 141, 125 N. E. 193, and cases there cited.   See, also, *Cleveland, etc., R. Co.* v. *Miller* (1905), 165 Ind. 381, 74 N. E. 509; *Creamery, etc., Co.* v. *Hotsenpillar* (1902), 159 Ind. 99, 64 N. E. 600; *Louisville, New Al-*

*bany and Chicago Railway Company* v. *Miller* (1894), 141 Ind. 533, 37 N. E. 343; *Jackson, Rec.,* v. *Rutledge* (1919), 188 Ind. 415, 122 N. E. 579.

A witness for the defendant stated that she was on the interurban at the time of the accident and that she saw the plaintiff lying on the ground, and there was one eye lying on her cheek; that it had apparently been out of socket and was lying on her cheek; that there was blood all over her face.

The plaintiff testified that the accident occurred November 25, 1917; that at that time she was thirty-two years old. She said: "I don't know what happened after I was hit. Didn't know anything for five or six days later. The first I knew I was at the Methodist Hospital when I became conscious. I was black and blue. There was a big hole in my head and my right ear was ground up. My arm lying on a pillow mashed and broken. My wrist was broken. I cannot close my left hand or bend my left wrist. When I was struck by the interurban I was blind. My eyes had been good. When I got so I could see the whites of my eyes were black for three months or more. My nose had been broken. I was in the hospital from the time I was hurt until three days before Christmas. After that went back every day for treatment for two months and one-half to three months. I then went to the Deaconess Hospital for treatment. Was there three weeks. Haven't taken any other treatment because I haven't had the means to do so. Cannot use my arm. My back was wrenched and sprained. I am not able to do housework and cannot do ironing, washing or sweeping. Have been suffering pain since I left the hospital all the time in my head, eyes and in my back. I have other effects of the injury. Have female trouble; have cramps and backache, cannot stand; other times have to go to bed and lie there. Before Novem-

ber 25, I was never sick in my life; had no physical defects, left arm in good condition. I had no scars on my eyes or on my head. Cut on my head remained for five or six months. Since the injury I have been unable to sleep. Can't wear a corset. Cannot stand on my feet any length of time."

In view of the serious nature of her injuries, which is not disputed by any evidence, we cannot say that the damages are excessive.

No reversible error appearing in the record, the judgment is affirmed.

### DISSENTING OPINION.

EWBANK, C. J.—The appellee recovered a judgment for damages for personal injuries sustained when one of appellant's interurban cars collided with an automobile in which she was riding. The collision occurred after dark on the evening of November 25, 1917, at a highway crossing in the country, about a mile and a half west of Morristown, in Shelby county, Indiana.

The complaint alleged that appellant was operating an interurban railroad and the car in question; that the interurban track ran in a westerly direction, and intersected the highway nearly at right angles; that east of the highway the track ran through a cut, and that south of the track on that side the surface of the ground was from three to fourteen feet higher than the highway, and covered with buildings and trees, and that this condition extended south from a point within fifteen or twenty feet of the track, and eastward many hundred feet; that said condition obstructed the view from the highway south of the track of cars approaching on the interurban railroad from the east, and interfered with hearing their approach; that appellee knew nothing about the highway or the country about there, or of the location of appellant's track; that she was riding

as a guest of the driver of the automobile and had no control over it; that the driver came up from the south and stopped near the track, and he and appellee looked and listened for cars, but could neither see nor hear any; that appellant by its servants ran its car west upon and over the crossing at the rate of fifty miles an hour with knowledge of the "condition of said public crossing," and negligently failed to sound the whistle or ring the bell at the statutory distance, or to give any warning of its approach, and negligently ran the car against the automobile in which appellee was riding, as it was started up and driven upon the crossing after being so stopped, and thereby inflicted the injuries complained of. After a general verdict in favor of the appellee had been returned and judgment thereon had been rendered, appellant duly filed its motion for a new trial, reserved an exception to the order overruling it, and perfected an appeal. Overruling said motion is the only error assigned that is not waived.

There was evidence tending to prove the facts alleged in the complaint, together with evidence designed to repel any inference of contributory negligence on the part of the appellee. A number of witnesses testified that the statutory signals for the crossing were not given. But there was also much evidence tending to prove that they were given, and that the appellee was guilty of contributory negligence in failing to see and hear the approaching car, if the automobile was stopped, and other evidence tending to show that, so far from being stopped to look and listen, the automobile was driven over a little hill and past the buildings and orchard, at high speed, upon the crossing, directly in front of the interurban car when it was running so fast that it could not be stopped until after the collision. There was also much evidence tending to impeach the appellee, who was her own sole witness as to what she and

the driver did at the time and just before driving upon the track

The court gave a series of instructions, to each of which the appellant reserved an exception, and specifications in the motion for a new trial presented for review those hereinafter set out.

Instruction No. 4, correctly told the jury that the fact that two persons were killed and appellee was injured when crossing appellant's track did not establish appellant's negligence nor entitle appellee to recover, and then added: "To enable her to recover it must be shown by a preponderance of the evidence that the defendant was guilty of the alleged negligence described in the complaint." This instruction did not refer to the effect of contributory negligence as a defense to the action if shown by the evidence. Neither did the instruction next before it, nor either of the next two which followed. And while it did not specifically direct a verdict in favor of the appellee if any negligence of the appellant had been proved, it carried a clear implication that she might recover upon mere proof that appellant was guilty of the negligence charged. Standing alone it was clearly erroneous. But by instruction No. 2, which preceded the one under consideration, and Nos. 7, 8 and 10, which followed it, the court expressly charged the jury that if appellee was guilty of negligence proximately contributing to her injury she would not be entitled to recover and the verdict should be for the appellant. These instructions so far supplemented the one from which the above quotation was made that I should not feel justified in reversing the judgment if this were the only error committed.

A number of witnesses testified positively that the whistle on the interurban car was sounded at the statutory distance from the crossing, and was also sounded half a mile farther back, and that it could be and was

heard by persons who were south of the crossing (appellee was approaching from the south), and was again sounded a short distance east of the crossing, while appellee offered evidence to the effect that no signal was given within a mile of the crossing until just at the instant when the car struck the automobile. The court gave an instruction (No. 16) that when approaching the crossing on the highway appellee had the right to assume that appellant would perform its statutory duty as to whistling, "yet failure to give such warning did not relieve the plaintiff from exercising ordinary care in approaching such track at the crossing and entering upon it." The language quoted seems to assume that the failure to whistle had been established, and the instruction ought to contain the qualification that it applied only in case appellant's failure to give the statutory warning had been proved. But the jury had been repeatedly told by instructions which preceded this one that appellee could not recover unless he had shown by a preponderance of the evidence that appellant was guilty of the negligence alleged, and two instructions which followed the one complained of expressly submitted to the jury the question whether or not the whistle was blown at the statutory distance from the crossing, and instructed them that unless it had been shown by a preponderance of the evidence that it was not so blown the jury must find for the defendant as to that charge of negligence. I do not think that the jury, after hearing all of the instructions, could be so far misled by this one as to require a reversal of the judgment for that cause alone.

There was evidence tending to prove that appellee was blameless; but there was also evidence tending to prove that appellee and her sister's husband, with his brother and a married woman whose husband was not along, left Indianapolis between eleven and twelve o'clock on

Sunday, November 25, 1917, in the brother-in-law's automobile, and drove to Shelbyville, which is southeast of Indianapolis, and is shown by the evidence to be distant twenty-eight miles from that city; that they were only out for a pleasure ride; that they reached Shelbyville about four o'clock, and ate supper there, and at half past four o'clock began to "drive around a little;" that they crossed four or five railroads, and were on their way home when the accident happened; that they were fourteen miles northeast of Shelbyville, and driving directly north when the car struck them; that immediately after the accident appellee said to a woman who came to assist her, "Don't ever do what I have done today," and the next day said that the party drank beer at Shelbyville, and after she left the hospital said that the party were drinking before they left Indianapolis and were about "half shot" when they started from there; that the crossing where the accident occurred was a highway crossing in the country; that at eight o'clock in the evening, after it was dark, the automobile, driven by her sister's husband, with appellee sitting in the front seat beside him, and his brother and the other woman in the rear seat, was driven from the south along the north and south highway toward and upon the crossing; that the highway crossed the track of a steam railroad about 100 feet south of appellant's track, and then ran over a hill several feet high and down to the crossing where the collision occurred; that the interurban track was straight for half a mile east of the crossing, and a brilliant light from the car was thrown ahead of it by an electric headlight located twelve feet above the track, which could be and was seen a mile away by witnesses south of the track; that from a point fourteen feet south of the track a car approaching from the east could be plainly seen down through the cut when 1,000 feet away; that the bank

of the cut in which the track is laid begins fifteen feet south of the track and slopes back about twenty-five or thirty feet to the height of ten feet; that appellee and the driver saw the interurban railroad track and knew they were approaching it after crossing the steam railroad, and he spoke to her about it, but that as they came near it they said nothing to each other; and that the automobile in which appellee was riding was driven up over the hill between the two railroads when the interurban car was only 125 feet away, running fifty miles an hour, and was run from there to and upon the track fast enough to reach the crossing ahead of the car.

The court gave an instruction (No. 13) which stated that if the driver was negligent that fact would not make the appellee chargeable with negligence, but that it was her duty to use care to learn of danger, and if she discovered the approaching car to warn the driver as soon as she saw it. Neither this instruction nor any other that was given intimated that the appellee might be chargeable with the consequences of the driver's negligence if she had gone with him for a pleasure ride, knowing that he had been drinking until he was "half shot" before they started for the ride, and if she knew that he drank some beer after they had driven four or five hours, and if he had driven her across four or five railroads and was driving toward the interurban crossing at a speed half as fast as fifty miles an hour, with knowledge that the crossing was there, and yet she did not leave the automobile and refuse to ride further with him, nor say anything to him about the manner in which he was running it. In effect this instruction took from the jury whatever defense, if any, the defendant might have been able to make on the ground that the appellee had voluntarily committed herself to the care of a driver that she knew would not exercise care, and was injured

by his negligence in driving at high speed over a hill and upon the track directly in front of a fast-moving car that could have been seen and avoided if he had drunk less and driven with more care. This was error. *Kirmse* v. *Chicago, etc., R. Co.*, 73 Ind. App. 537, 127 N. E. 837.

Appellee denied that the driver had been drinking, or that they were out for a pleasure ride, or that the automobile was driven over the hill and on the track at high speed and without stopping. But appellant was entitled to go to the jury upon all the questions as to which the evidence was conflicting

The court gave an instruction (No. 14) that the complaint charged appellant with running its car at "an unlawful rate of speed," and that, while no statute limits the speed at which an interurban car may run, yet if appellee was free from contributory negligence and the "rate of speed was the proximate cause of the injuries" to appellee, then, "if you should find that the car was running at a rate of speed which was dangerous to persons using this highway crossing, * * * you will find for the plaintiff. * * * In other words, the rate of speed of an interurban car must be regulated at a crossing by the conditions surrounding that crossing at the time."

This was error. The appellant company could only be charged with negligence because of the high rate of speed at which it ran its car along its private right of way and across a highway in the country by reason of conditions surrounding the crossing in case those conditions were known to it or its servants engaged in running the car, or would have been known to it or them if due care to learn of the surrounding conditions had been exercised. No rate of speed could be an "unlawful rate" in and of itself, and the mere speed at which the car was run over such a crossing could not constitute

actionable negligence in itself, as affecting a traveler on the highway. *Terre Haute and Indianapolis R. Co.* v. *Clark, Admr.* (1880), 73 Ind. 168; *Brooks* v. *Muncie, etc., Traction Co.* (1911), 176 Ind. 298, 306, 95 N. E. 1006; *Indiana Union Traction Co.* v. *Love* (1912), 180 Ind. 442, 449, 99 N. E. 1005; *Terre Haute, etc., Traction Co.* v. *Phillips,* 191 Ind. 374, 132 N. E. 740. And if credit were given to the evidence relied on by the appellant, instead of that introduced on behalf of the appellee, the "conditions surrounding that crossing at the time" which made the speed of the car "dangerous to persons (then) using this highway crossing" must be deemed to have been conditions created by the way in which and the speed at which the automobile was run to and upon the crossing. Appellee insists that the language quoted had reference to the depth of the cut in which appellant's tracks was laid, how near the track was to the south bank of the cut, the location of buildings and trees immediately south of the cut, and the facts testified by appellee as to her inability to see down the track toward the approaching car, or to hear it coming when only fifteen feet from the track, where she said the automobile was stopped. But a number of these matters were only testified by the appellee, and all of them were denied by a number of witnesses; while the fact that the interurban car and the automobile approached the crossing at the same time, and that both reached it at the same instant, were facts as to which all the witnesses were agreed. But if the crossing was so constructed and the surroundings which were known to the motorman and to appellant were such that a traveler who used ordinary care to look and listen for approaching cars could learn whether one was coming in time to avoid being struck by it, as appellant's evidence tended to show, the rate of speed at which the car was operated could not constitute negligence because of facts exist-

ing "at the time" which the motorman and the appellant could not and did not know. An instruction should be correct as applied to the evidence relied on by each party, and not merely as applied to the evidence favorable to the one who recovered in the trial court. As applied to the evidence introduced and relied on by appellant this one was erroneous.

In my opinion the errors in giving the instructions numbered 13 and 14 were not cured by the other instructions given, and in view of the evidence above recited they were prejudicial, and the judgment ought to be reversed. Therefore I respectfully dissent from the prevailing opinion.