Sutton vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

No sound reason is perceived why, in this respect, it should be accorded rights or advantages superior to those of residents or such other suitors in the courts of the state.

The proceeding against the relator for contempt, in accordance with the authorities already cited, should have been discharged upon payment by him of the costs thereof. For the reasons stated the order of the circuit court must be reversed, and the cause remanded to that court for further proceedings in conformity with this opinion.

*By the Court.*—Judgment is ordered accordingly.

SUTTON, Respondent, vs. THE CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant.

*November 16, 1897 — January 11, 1898.*

*Railroads: Collision at highway crossing: Negligence: Excessive speed: Failure to fence: Restoring highway: Evidence: Failure to give signals: Improper remarks of counsel: Judicial notice.*

1. In an action against a railway company to recover for the killing of a team in a collision at a highway crossing in the country, where no statute or ordinance regulated the rate of speed, negligence cannot be inferred from the mere fact that the train was running about forty miles per hour.

2. The failure of a railroad company to properly fence its right of way cannot be the basis of a recovery for the killing of a team at a highway crossing, where there is no evidence tending to show that the fence or its absence had anything to do with the accident.

3. In order to charge a railroad company with negligence by reason of an open ditch in the highway at a crossing, on the ground that the company had failed to restore the crossing to its former condition of usefulness as required by sec. 1836, R. S., it must appear that the ditch was caused by the failure of the company to comply with the statute.

4. The existence of a highway when a railroad was constructed, so as to render it the duty of the company to restore the highway to its former condition of usefulness, under sec. 1836, R. S., is *held* to

Sutton vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

have been established, *prima facie*, by the evidence of witnesses that they were acquainted with the highway at the point in question before the railroad was built and that it was traveled at that time; and introduction of the records of the laying out of the highway was unnecessary.

5. Evidence of witnesses who were not listening for locomotive signals at a highway crossing, and did not have their attention directed to the subject, that they did not hear the whistle blown at the proper distance from the crossing, but did hear it blown at a much less distance, is *held* insufficient to support a verdict to the effect that proper signals were not given.

6. Repeated statements that one of plaintiff's witnesses had been corrupted by the defendant's agents, made by plaintiff's counsel in the presence of the jury while endeavoring to obtain permission to treat such witness as an adverse witness and to read his deposition, which could not be used under sec. 4089, R. S., because the witness was present in court, are *held* to have been so prejudicial to defendant as to warrant reversal of a judgment for plaintiff.

7. This court will not take judicial notice of the fact that a person whose name appears upon its roll of attorneys had removed from the state at the time he signed a notice of appeal.

APPEAL from a judgment of the circuit court for Monroe county: O. B. WYMAN, Circuit Judge. *Reversed.*

This is an action to recover the value of a team of horses killed by a collision with defendant's passenger train upon a country highway crossing about a half mile northwest of the city of Augusta, in Eau Claire county, on the 19th day of March, 1892.

The highway in question runs directly east and west, and is a main road, traveled extensively. The railway track crosses the highway obliquely, from northwest to southeast, and the highway is slightly turnpiked up above the natural level of the ground at the crossing. On the day of the accident a young man named Humes was driving along this highway from west to east. He was driving a young team belonging to his father, hitched to a wagon with a long reach and without any box. He was riding upon the rear hounds of the wagon, or upon the rear bolster, and was leading be-

hind a heavy team belonging to the plaintiff, which was hitched to a wagon with a wood rack thereon. The young man approached the crossing from the west at about noon, and, as he crossed the track, the rear team (being the plaintiff's team) was struck by the defendant's regular passenger train coming from the northwest at a speed of forty miles an hour, and, as a result of the collision, the team was killed, the rear wagon and harness destroyed, and the young man was instantly killed. The complaint alleged negligence on the part of the railway company in failing to restore the highway to its former state, and in failing to properly fence the same; also in running its train at a dangerously high rate of speed; also in failing to give the proper signal, by sounding the whistle or ringing the bell.

The circuit judge charged the jury that there was no evidence that the train was running at an unlawful rate of speed, and that they could not find negligence because of the speed of the train, nor because of failure to fence, but submitted to the jury the other alleged grounds of negligence. A general verdict was returned for the plaintiff, fixing the damages at $508, and from judgment thereon the defendant appealed.

For the appellant there was a brief by *L. K. Luse,* attorney, and *Thomas Wilson,* of counsel, and oral argument by *Mr. Luse.*

*J. J. Sutton,* respondent, *in pro. per.*

WINSLOW, J. The defendant claimed upon the trial below that the evidence failed to show any negligence upon its part in any of the ways claimed by the plaintiff, and the questions arising upon this broad claim are properly preserved by exceptions for review upon this appeal. As stated in the statement of the case, negligence causing the injury was claimed by the plaintiff in four respects, viz.: (1) In running the train at a dangerously high rate of speed; (2) in

failing to properly fence its right of way; (3) in failing to restore the highway to its former condition; and (4) in failing to give the proper signals.

1. The court finally took from the jury the question of the alleged negligent rate of speed of the train, and charged that the evidence did not show negligence in this respect. This was plainly right. The crossing was in the country, where there was no limitation, either by statute or ordinance, upon the speed of trains. Under such circumstances, it cannot be said that it is negligence to run a train at or about the speed of forty miles per hour, or that negligence can be inferred from such fact alone. *Mills & Le Clair L. Co. v. C., St. P., M. & O. R. Co.* 94 Wis. 336.

2. The court also charged that there could be no recovery upon the ground of failure to properly fence the right of way, and this was so clearly correct that we shall spend no time in discussing it, but simply say that there was no evidence tending to show that either a fence, or the absence of a fence, had anything to do with the accident.

3. The statute (R. S. sec. 1836) requires every railway company constructing its road across or upon any highway to restore such highway to its former state, or to such condition that its usefulness shall not be materially impaired. It has been held by this court that this provision applies only to cases where the railroad is built upon or across an already existing highway. *Chicago, M. & St. P. R. Co. v. Milwaukee*, 97 Wis. 418. In the present case it is claimed that there was no evidence to show that the highway in question was an existing highway at the time of the construction of the railroad, and hence that the statute above referred to had no application. Upon this point it is sufficient to say that two witnesses acquainted with the locality testified, in substance, that they were acquainted with the highway at this point before the railroad was built, and one of them stated that it was traveled at that time. We re-

gard this testimony as sufficient to establish, *prima facie* at least, the fact that the highway existed at the time the railroad was constructed over it.   We do not think it was necessary for the plaintiff to introduce the record of the laying out of the road, in the absence of any testimony to the contrary.

The defect which it was claimed existed in the highway, and for which it was claimed the defendant was responsible, was that there was a deep ditch within the limits of the highway and of the railroad right of way, just south of the traveled portion of the highway, as it approaches the point of crossing.   There was some testimony which tended to show that the young man heard the train, and stopped his horses within a short distance of the crossing, and that they plunged somewhat, and went partially into the ditch, and then came out of it, throwing the young man from his seat to the ground when about crossing the track, just ahead of the train, and so it is claimed that the existence and presence of the ditch was a direct cause of the accident.   The radical difficulty with this claim is that it is nowhere shown that the ditch was constructed or caused by the building of the railroad.   As far as the evidence shows, it may have existed at the time the railroad was built.   Certainly it was necessary for the plaintiff to show that the railroad company failed in performing its duty under the statute, and in so failing caused or made the ditch.   There being an entire absence of such evidence, there was nothing to go to the jury upon this ground of negligence.

4. As to the alleged failure to give the statutory signals for the crossing, there was really no evidence which would support a verdict to the effect that the proper signals were not given.   No witness testified that the bell was not rung, and two witnesses testified, simply, that they did not hear the whistle blown eighty rods before reaching the crossing, but did hear it blown at a point about forty-five rods west

of the crossing. Neither of these witnesses was listening for the signal, or had his attention directed to the subject; and under the rule stated in *Wickham v. C. & N. W. R. Co.* 95 Wis. 23, this evidence will not support a verdict that the signal was not given. On the other hand, there was positive evidence, not only on the part of the train employees, but by other disinterested witnesses, that the proper signals were given. In this condition of evidence there was nothing to go to the jury upon this claim of negligence.

These conclusions necessitate reversal of the judgment.

There are some other contentions made, however, which seem to require attention.

The plaintiff called as a witness one Bennett, who was upon the highway at the time of the accident, and was an eyewitness of it. It seems that Bennett's deposition had been previously taken by consent of counsel on both sides, under an oral stipulation that it might be read upon the trial. However, the witness was present at the trial, and so the reason for using it no longer existed, and, under the statute, it was no longer admissible. R. S. sec. 4089. Shortly after beginning the examination of Bennett, *Mr. Sutton*, who conducted his case in person, stated that he wished to read from the deposition, and to cross-examine the witness, which proceeding was duly objected to. *Mr. Sutton* then proceeded in his endeavor to get the deposition in evidence, stating, in presence of the jury, that "the witness' evidence is so far at variance with his deposition that it is an outrage on the court;" that he had expected it, ever since he had seen the witness in close consultation with Mr. Luse; that the witness had been "handled" by defendant's claim agent and attorney, and that he (*Sutton*) knew what he was talking about, and that for that reason he was not surprised when the witness came into court and made these statements now. After considerable of this sort of talk on the part of counsel, and a number of reiterations in various ways of the charge that the witness had been tampered with, the court refused to

allow the deposition to be read, but permitted *Mr. Sutton* to treat the witness as an adverse witness, and to cross-examine him as to what he testified to in his deposition. Whether this was a case where, in the exercise of a sound discretion, the plaintiff should have been allowed to cross-examine his own witness may be doubtful (*Juneau Bank v. McSpedon*, 15 Wis. 629), and we do not deem it incumbent upon us to decide that question. Certain we are, however, that the course of the plaintiff, in making repeated charges that the witness had been corrupted by the defendant's agent, was entirely unjustifiable, and ought, of itself alone, to call for a reversal of the judgment. Such charges, made without the sanction of an oath, are no part of proper legal warfare, and at the same time they are eminently calculated to mislead and prejudice the jury. A case that cannot be won fairly upon the evidence by the use of legal and lawyer-like methods, presumably does not deserve to be won. The same criticism applies to a remark injected into the case at another stage of the trial, to the effect that the company had already settled for the death of the young man. It is true that, upon objection being made to the last-mentioned remark, the court said that it should not be mentioned; but we have found no ruling or caution to the jury with reference to the other remarks, and we cannot but regard them as coming clearly within the rule laid down by this court in the case of *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348.

A suggestion was made that the appeal should be dismissed for the reason that Mr. Luse, who signed the notice of appeal, was not at that time a resident of this state. Mr. Luse's name appears upon the roll of attorneys of this court. There is nothing in this record to show that he has changed his residence, and certainly the court cannot take judicial notice of the fact. What would be the effect of such a change, if it were shown to have taken place, is not determined.

*By the Court.*— Judgment reversed, and action remanded for a new trial.