LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY v. BARNES.

[No. 20,614. Filed January 24, 1906.]

1. PLEADING. — Presumptions.—Railroads.—Highway Crossings. —Negligence.—Where a complaint against a railroad company for negligence in injuring plaintiff at a highway crossing fails to allege that the statutory signals were not given or that there was some obstruction to the sight or hearing, the presumption is that such signals were duly given and that such track was straight, open and visible for more than eighty rods in both directions. p. 9.

2. RAILROADS.—Speed.—Negligence.—It is not negligence per se to run a train over an ordinary country highway crossing at the speed of fifty miles an hour. p. 10.

3. PLEADING. — Negligence. — Affirmative Allegations. — A complaint for negligence must affirmatively show the acts constituting same. p. 10.

4. RAILROADS. — *Powers.* — *Failure of Legislature to Restrict Speed.*—The failure of the legislature to restrict the rate of speed of railroad trains in the rural districts is an implied authority for such companies to run their trains over ordinary highway crossings at any rate of speed desired, consistent with the safety of their servants and passengers. p. 10.

5. SAME.—*Highway Crossings.*—*Signals.*—*Whether Giving of is Conclusive against Negligence.*—The giving of the statutory signals by a railroad company at a highway crossing is not conclusive that such company is not guilty of negligence in relation to a person injured at such crossing. p. 13.

6. PLEADING. — *Complaint.* — *Railroads.*—*Highway Crossings.*— *Used by "Great Number of Persons."*—An allegation, in a complaint in an action against a railroad company on account of injuries received at a country highway crossing, that such highway crossing was used by "a great number of persons," is so indefinite as to be insignificant. p. 13.

7. RAILROADS.—*Highway Crossings.*—*Use of.*—*Negligence.*—The frequent use of a rural highway crossing, in the absence of a showing of impediment of progress, does not, of itself, constitute a railroad company guilty of negligence in running its train thereover at a high rate of speed. p. 13.

8. APPEAL AND ERROR.—*Complaint.*—*Good and Bad Paragraphs.* —*Judgment.*—A judgment for the plaintiff rendered on a complaint containing good and bad paragraphs can not stand unless it affirmatively appears that such judgment rests exclusively on a good paragraph. p. 14.

From Laporte Circuit Court; *John C. Richter,* Judge.

Action by Jennie Barnes against the Lake Shore & Michigan Southern Railway Company. From a judgment on a verdict for plaintiff for $5,500, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*Miller, Drake & Hubbell,* for appellant.

*Joseph G. Orr,* for appellee.

HADLEY, J.—Action by appellee for personal injuries, received at a railroad crossing, alleged to have been caused by the appellant's negligence. Upon issues joined there was a verdict and judgment for the plaintiff, from which the defendant appeals.

The complaint is in two paragraphs. The first alleges that the defendant negligently ran its train of cars over the grade crossing at the Michigan road, situate 200 feet east of the east corporation line of the town of New Carlisle, at the dangerous speed of fifty miles an hour, without sounding the engine whistle, or ringing the bell, or otherwise warning the plaintiff of the approach of said train.

In the second paragraph the negligence alleged is that the defendant negligently ran its train over the Michigan road crossing, situate 200 feet east of the east corporation line of the town of New Carlisle, at a reckless, dangerous and negligent rate of speed, to wit, fifty miles an hour, without making any attempt to stop or check the train, thereby colliding with the buggy in which the plaintiff was riding, and causing her to be greatly injured, without fault on her part; that said Michigan road was, at the time, the main highway between South Bend and New Carlisle, and a great many persons were constantly traveling thereon and crossing said track.

Separate demurrers were overruled to each paragraph of the complaint, and separate exceptions reserved to each ruling. The first paragraph is conceded to be good by failure to set it out in the brief, or to question its sufficiency in any way.

A vigorous assault, however, is made upon the second paragraph, which is worthy of serious consideration. It will be noted that the second paragraph does not
1. allege the omission of any of the signals required of trainmen in approaching grade crossings; neither does it allege that there existed any obscurity of the railroad, nor that there was any obstruction to sight or hearing to persons at or near the crossing. Therefore, as against the pleader, in ruling upon the demurrer, we must presume that, at the crossing, the railroad, in both directions, was straight, open and free from obstructions of any kind for a

distance of more than eighty rods, and that the whistle was sounded and bell rung as provided by the statute.

The questions, therefore, arising upon the demurrer are twofold: (1) Can we say as a matter of law that running a train at the rate of fifty miles an hour over an ordinary country highway grade crossing, observing in the doing of it all the signals and warnings enjoined by the statute, constitutes negligence *per se;* and (2) if the first is answered in the negative, then do the facts averred in the second paragraph, concerning the amount of travel over the crossing—the environments being ordinary—present such a mixed question of law and fact as calls for its submission to the jury?

If it is not of itself an act of negligence to run trains over the crossing in question at a speed of fifty miles an hour, and if the paragraph exhibits no other actionable fault, there can be no recovery upon this paragraph, and it becomes immaterial whether the plaintiff was hurt by a pure accident, or her own want of care. In other words, it must affirmatively appear that the defendant was guilty of some negligent act or omission or there can be no recovery. *Lake Erie, etc., R. Co.* v. *McFall* (1905), 165 Ind. 574.

First, then, is it unlawful to run a railway train over a country and suburban highway crossing at a velocity of fifty miles an hour? Under the laws of the State, corporations are permitted to form, and have been given a license to appropriate private property, and locate and operate a railroad on the shortest or most practicable route between points. The chief consideration for this important grant of power was to enable such corporations better to serve the public by transporting passengers and freights more speedily than can be accomplished by ordinary conveyances. It was obvious to the legislature that to require a train to be stopped, or slowed down, at every country road, whenever its managers observe a trav-

eler in a common vehicle approaching the railroad at a rate of speed that will carry him to the crossing at the same moment it will be reached by the train, would, on account of the frequency of the crossings in this State, and the length of time required to get trains under way, practically defeat the legislative purpose in granting railroad franchises. Such requirement would be plainly incompatible with rapid transportation. It was the better and faster conveyance desired by the people that inspired the building of railroads and the development of speed, and it is what they expected in return for the rights surrendered for the construction of such roads. So, when the general assembly, with full power to regulate the speed of trains in suburban and rural districts, as well as to authorize it to be done by the cities and towns of the State, wholly failed to exercise its power with respect to the former, the failure may be accepted as implied authority for railroad companies to run their trains in the open country, where they may be seen and heard for long distances, and over ordinary public crossings therein, at any speed they choose that is consistent with the safety of the persons and things in their charge. *Telfer* v. *Northern R. Co.* (1862), 30 N. J. L. 188; *Newhard* v. *Pennsylvania R. Co.* (1893), 153 Pa. St. 417, 26 Atl. 105, 19 L. R. A. 563; *Warner* v. *New York Cent. R. Co.* (1871), 44 N. Y. 465; *Childs* v. *Pennsylvania R. Co.* (1892), 150 Pa. St. 73; *Custer* v. *Baltimore, etc., R. Co.* (1903), 206 Pa. St. 529, 55 Atl. 1130; *Sutton* v. *Chicago, etc., R. Co.* (1898), 98 Wis. 157, 73 N. W. 993; *Atchison, etc., R. Co.* v. *Judah* (1902), 65 Kan. 474, 70 Pac. 346; *New York, etc., R. Co.* v. *Kistler* (1902), 66 Ohio St. 326, 64 N. E. 130; *Lake Erie, etc., R. Co.* v. *McFall, supra; Terre Haute, etc., R. Co.* v. *Clark* (1880), 73 Ind. 168; 3 Elliott, Railroads, §1160.

To protect the public against fast running, and to enable travelers on intersecting highways, who may be on, or about to enter upon, the crossing, to reach a place of safety, all

enginemen are required, as a warning notice of an approaching train, when not more than one hundred nor less than eighty rods from a public crossing, to sound the whistle of the engine distinctly three times, and ring the bell continuously from the sounding of the whistle until the crossing is passed. §5307 Burns 1901, §4020 R. S. 1881. In the open country, where trains may be seen or heard for the distances designated in the statute, a traveler who is as alert as the law requires him to be, and who promptly heeds the signals, can hardly fail to get out, or keep out, of harm's way from a train running at any usual speed. Thus, a train running sixty miles an hour will require fifteen seconds from the sounding of the whistle and ringing of the bell to reach the crossing, a long time for him who is on the crossing to drive off, and a short time for him who is about to enter upon it to wait for the train to pass.

In cities and towns the conditions are generally different. The crossings are at short intervals, and the houses usually built close together and up to the line of the railroad. These not only obstruct the view of an approaching train, but retard the sound of the warning signals, and, in contrary winds, tend to make the latter misleading, and difficult, if not impossible, to hear in time for those upon the crossing to escape a rapidly approaching train. This most excellent reason for the legislative warrant for restricting the speed of trains within the corporate limits of cities and towns does not apply to the country.

Second, is the averment, "that said Michigan road was at the time the main highway between South Bend and New Carlisle, and that a great many persons were constantly traveling said highway, and crossing said tracks," sufficient to characterize the crossing as so extra hazardous as to form an exception to the rule and entitle the plaintiff to carry the question of the defendant's negligence to the jury?

Compliance with the statute in the giving of signals may not always constitute due care in running over country crossings. There may be cases where excessive or unusual speed, considered with other facts and surrounding circumstances, may become an element of negligence, even though statutory signals have been given, but such exceptional conditions must be averred in the complaint. *New York, etc., R. Co.* v. *Kistler, supra; Cleveland, etc., R. Co.* v. *Miller* (1898), 149 Ind. 490, 506.

But no attempt is made to set up in the paragraph under consideration an exceptional crossing, except as to the number of persons using it. As we must view the complaint, it exhibits a perfectly open crossing, a straight, clear track, properly given signals, and the only fault charged to the defendant is the rate of speed maintained over a crossing that was constantly being used by a great number of persons. In the first place, "a great number of persons" is a term so indefinite, as to the number intended, that it has no significance in pleading; and, in the second place, we are unable to see how the number of persons daily passing or repassing over the crossing between New Carlisle and South Bend can affect the rights and duties of appellant at the crossing, in the absence of any showing that the number was known to be so great as to impede progress, or in some other way make the crossing more difficult and dangerous to travelers.

Persons having eyes and ears must use them at grade crossings, each for himself, whether alone or in a great company, and, when by the exercise of due care each may escape injury, it makes no difference in the company's right to speed its train over a crossing whether there is one or many in the act of passing over the same. This leads us to the conclusion that there is no act or omission charged against appellant in the second paragraph of complaint that affords a ground for recovery for negligence, and the court erred in overruling the demurrer thereto.

Third, it is a familiar rule that a judgment for a plaintiff can not stand when rendered upon a complaint containing a bad paragraph, which has been held good on demurrer, unless the record affirmatively shows that the judgment rests exclusively upon a good paragraph. *Lake Erie, etc., R. Co.* v. *McFall, supra,* and cases cited; *Baltimore, etc., R. Co.* v. *Jones* (1902), 158 Ind. 87.

We are unable to determine from the record where the verdict and judgment are rooted—whether in one, or the other, or in both, paragraphs of the complaint. It is clear that testimony distinctly in support of the second paragraph, was allowed to go to the jury, over appellant's objection. Notably, one witness was permitted to testify to the number of persons he counted using the crossing in twelve hours, about two years before the plaintiff's accident. Another testified that the country along the Michigan road between New Carlisle and South Bend was thickly populated. How far, if at all, this testimony influenced the verdict is beyond our power to ascertain, and under the rule above announced the judgment must be set aside. There are divers other questions presented—chiefly on instructions given and refused and on the admission and rejection of evidence—which are not likely to arise again, and are therefore not considered.

Judgment reversed, with instructions to sustain appellant's demurrer to the second paragraph of the complaint.