NEW YORK CENTRAL RAILROAD COMPANY *v.* SOLOMON, ADMINISTRATRIX.

[No. 13,047. Filed June 7, 1928. Rehearing denied October 5, 1928. Transfer denied October 25, 1928.]

*Sidney Murray, John A. Gavit, John G. Yeagley* and
*Phil L. Nicar*, for appellant.

*Seebirt, Oare & Omacht* and *Z. Dekelboum*, for appellee.

NICHOLS, J.—Action by appellee against appellant,
by a complaint in one paragraph, by which appellee seeks
to recover damages for the death of Louis Solomon, her
decedent, occasioned by a collision between one of ap-
pellant's trains and an automobile truck which the de-
cedent was driving. It is alleged that appellee's de-
cedent was killed at a highway, over which appellant's
railroad track crossed at grade, by a collision between
one of appellant's trains and an automobile truck driven
by the decedent.

There are two charges of negligence in the complaint:
(1) A high and dangerous rate of speed of more than
fifty miles per hour; (2) a failure to give a warning of the

approach of the train by whistle, bell, or by any signal whatever.

. After appellant's demurrer to the complaint was overruled, there was an answer in general denial, and a trial by jury which resulted in a general verdict for appellee for $4,000, upon which judgment was rendered, from which this appeal. Appellant first contends that the court erred in overruling its motion for judgment on the jury's answers to interrogatories propounded to it. The jury specially found by these answers, stated in narrative form, that the crossing at which the accident occurred was in the country, outside of any municipal corporation; appellant's single track railroad crossed the highway at grade in a southwesterly and northeasterly direction at an angle of about forty-five degrees; there were other tracks in the vicinity of the crossing; appellee's decedent was driving a Ford truck southward to said crossing, and there was a collision between said truck and appellant's passenger train, which was running to the southwest, on September 25, 1925, at about 6:51 o'clock in the morning; it was full day light, and the day was bright and clear; the decedent had good eyesight and good hearing; there was a whistling post eighty rods northeast of the crossing, before reaching which and less than 100 rods from the crossing, appellant's engineer sounded the whistle by giving two long and two short blasts and the bell was ringing continuously thereafter; the train was being operated at a speed of thirty-five to forty miles per hour; before the collision, and when the engine was approximately 150 feet northeast of the crossing, the engineer sounded several short blasts of the whistle, and immediately applied the emergency brakes, which brakes were in good condition; immediately preceding his death, and as the decedent was driving south on the approach to the crossing, 200 feet from the crossing, he could have

looked to the northeast and had a clear view of the track at all points for 440 feet; 100 feet from the crossing, he could have had a clear view for 575 feet; when fifty feet from the crossing he had a clear view for more than 500 feet; when forty-six feet from the crossing he could see a person standing on the track 1,000 feet to the northeast; when forty feet from the crossing, he had a clear view of the track for more than 1,000 feet to the northeast; and, when thirty-five feet from the crossing, he had a clear view of the track for more than one-half mile; as he approached the point where he was struck, had he diligently and carefully looked and listened for the approach of the train, he could have heard or seen it in time to have avoided the accident; when the truck was thirty or forty feet from the track, it was moving about seven miles per hour; there was an operator's house or shanty north of the track on the right of way about 434 feet from the center of the highway; there were other buildings between said shanty and crossing—a station sign; there was a railroad sign on the south side of the track and east of the highway, reading "Railroad Crossing Danger" and 300 feet north of the crossing, and adjacent to the traveled portion of the highway, there was a sign bearing the letters "R. R."; the decedent was familiar with the crossing; the track was straight for more than a half-mile, and the nearest tree to the track was 134½ feet north of it; the engineer, upon discovering that the truck would not stop to permit the train to pass, applied the emergency brakes; the engineer was the only person provided with devices with which to stop the train; the emergency brakes on the engine were connected with the train, and there was no other device with which to make a quick stop; at the time of the accident, the truck was equipped with brakes which were in good working order.

It is well established, and conceded by both parties, that in ruling upon a motion for judgment on answers to

interrogatories notwithstanding the general verdict, the court will look only to the pleadings, in this case, the complaint and answer, the general verdict, and the answers to the interrogatories. *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 53 N. E. 235.

And it is a well-settled rule that to justify sustaining a motion for a judgment on the answers to the interrogatories, the conflict between such answers and the general verdict must be such that it could not be overcome by any evidence admissible under the pleadings. *Consolidated Stone Co.* v. *Summit, supra.*

As stated above, there are two charges of negligence in the complaint—the one, of operating the train at a high and dangerous rate of speed of more than fifty miles per hour, and the other, of failing to give warning of the approach of the train by whistle, bell, or by any signal whatever. In order that the general verdict and the judgment thereon be sustained, it must affirmatively appear that appellant was guilty of one of the acts of negligence charged in the complaint. It is averred therein that the train was being operated at a high and dangerous rate of speed of more than fifty miles per hour, but it appears by answers to interrogatories that the train was running at the speed of only thirty-five or forty miles per hour. It also appears by answers to interrogatories that the country was open, the ground level, and that there were no obstructions preventing appellee's decedent from having a clear view of the track to the northeast had he looked, except such obstructions as a small station house, referred to as a shanty, would make. Under such conditions, it cannot be said that a railroad company is guilty of negligence in operating its train over a country crossing at a speed of thirty-five or forty miles per hour. *Brooks* v. *Muncie, etc., Traction Co.* (1911), 176 Ind. 298, 95 N. E. 1006;

*Wabash R. Co.* v. *McNown* (1912), 53 Ind. App. 116, 99 N. E. 126, 100 N. E. 183. If there were undisclosed reasons why a speed of thirty-five or forty miles per hour was excessive, such reasons should have been averred and proved. *Lake Shore, etc., R. Co.* v. *Barnes* (1906), 166 Ind. 7, 76 N. E. 629, 3 L. R. A. (N. S.) 778n.

Appellee says that while the answers to interrogatories show that appellant gave the statutory signals, this does not negative the fact that appellant was negligent by reason of its failure to give other signals than the statutory ones. It appears by answers to interrogatories that, in addition to the statutory signals, the bell was ringing continuously and that, at a distance of about 150 feet from the crossing, appellant's engineer gave a number of short sharp blasts of the whistle, and when he saw that the decedent was not intending to stop for the train, he applied the emergency brakes. It further appears that, at about 300 feet north of the crossing, there was a railroad sign giving notice of the presence of a railroad, and another at the crossing not only calling attention to the presence of the railroad but to the fact that it was dangerous. Appellee has not pointed out any other precautions that appellant might have taken, and we do not think of any, the evidence of which was admissible under the pleadings. It clearly appears by the answers to the interrogatories that appellant was not guilty of negligence as charged in the complaint. Having reached this conclusion, we do not need to consider other questions presented by appellant.

The judgment is reversed, with instructions to the court to render judgment in favor of appellant upon the answers to the interrogatories, notwithstanding the general verdict.

Dausman, J., absent.