WATSON, ADMINISTRATRIX *v*. VANOSDAL, RECEIVER.

[No. 27,150. Filed February 20, 1939.]

*Othniel Hitch, Wilbur F. Pell,* and *Morris E. Mc-Daniels,* for appellant.

*Kane, Blain & Hollowell,* for appellee.

FANSLER, J.—This is an action for damages for the death of the appellant's decedent. There was a trial by jury, and a judgment for the defendant upon the answers to special interrogatories, notwithstanding a general verdict for the appellant.

The appellant assigns error upon the action of the court in sustaining the appellee's motion for a judgment on the interrogatories and answers thereto, and upon the overruling of appellant's motion for a new trial.

The motion for a new trial asserts error in the giving and refusing to give certain instructions; that the verdict of the jury is not sustained by sufficient evidence; that the answers to each of the interrogatories are not sustained by sufficient evidence; that the verdict is contrary to law; and that the damages assessed are erroneous, being too small.

The evidence is not brought into the record, so that any question as to the sufficiency of the evidence is waived. The instructions were directed to the general issue, and, even though erroneous, the error was harmless if the court correctly entered the judgment upon the interrogatories and answers. The same is true as to the other causes for a new trial assigned.

It appears that appellant's decedent, together with a large number of other persons, procured a truck and trailer for use in transporting themselves to a lodge "frolic" or "barn dance" to be held several miles northeast of the City of Indianapolis; that they were proceeding north on Emerson Avenue, outside the City of Indianapolis, and approached the appellee's interurban railway, operated upon a private right of way, at a point where it crosses Emerson Avenue, and in attempting to cross over the tracks the trailer was struck by one of appellee's interurban cars, and the appellant's decedent was killed.

It is alleged in the complaint that the railroad crossing was exceptionally hazardous; that the view was obstructed; and that there were no gates, automatic signals, or watchman. It was charged that, under the circumstances, the appellee was guilty of negligence in the following respects: (1) That it failed to give the statutory cross-signal on the approach of its car; (2) that its car was operated at the dangerous rate of speed of 70 miles per hour; (3) that the

appellee's car was operated without a headlight sufficiently visible to enable travelers to see and discover the approach of the car; (4) that the car was operated without sufficient brakes; and (5) that the car was not equipped with a headlight which complied with the Public Service Commission order that it should be sufficient so that an object the size of a man could be seen 600 feet ahead of and in front of such headlight. These were the only acts of negligence alleged, and unless one or more of them were established the appellant was not entitled to recover.

The jury found that Emerson Avenue is paved for a considerable distance on both sides of the railroad crossing; that there was a cross-arm warning signal located on the east side of the pavement in Emerson Avenue, approximately 13 feet south of the appellee's tracks; that the pavement and the tracks were on approximately the same level at the point of crossing; that Emerson Avenue is practically level for approximately 250 feet south of the crossing; that the truck and trailer approached the crossing from the south, and appellee's car from the east; that the contiguous ground in the southeast corner or segment adjoining Emerson Avenue and the interurban tracks was approximately two to three feet lower than the level of the tracks and the highway for a distance of 200 feet south and 800 feet east of the intersection; and that the tracks east of Emerson Avenue, for a distance of 1,000 feet, were approximately one to three feet higher than the contiguous ground on the south side of the tracks; that at the time of the collision a traveler in a motor vehicle on Emerson Avenue approaching the interurban tracks from the south at a point 233 feet from the intersection had an unobstructed view of an interurban car approaching the crossing from the east for a distance of 250 feet; that when within 133 feet of the

crossing he had an unobstructed view of an approaching car for 500 feet; that when within 115 feet of the crossing he had an unobstructed view of an approaching car for 600 feet; that when within 100 feet of the crossing he had an unobstructed view of an approaching car for 700 feet; that when within 72 feet of the crossing he had an unobstructed view of an approaching car for 1,000 feet; that when within 60 feet of the crossing he had an unobstructed view of an approaching car for 1,500 feet; that when within 50 feet of the crossing he had an unobstructed view of an approaching car for 1,800 feet; that when the truck and trailer were approximately 100 feet south of the crossing they were being operated at a speed of 15 miles per hour, and that they continued to be operated at the same rate of speed until the collision occurred; that the truck and trailer could have been stopped within 40 feet; that at a point 40 feet south of the intersection there were no obstructions which would interfere with the view of the operator of the motor vehicle in observing an interurban car approaching from the east; that the interurban was visible to the appellant's decedent and the driver of the truck had they looked with reasonable care as they approached the crossing. To the question: "Was the accident complained of in the complaint caused by the act of the driver of the motor truck in driving said motor truck and trailer on to said interurban track in front of said interurban car when said interurban was so close to said Emerson Ave. crossing that it could not be stopped and the collision avoided?" the jury answered: "Foster & driver to blame." As to the charge of failure to give the statutory signal, the jury found that the volume of sound produced by the whistle of the interurban car was sufficiently loud to warn travelers on a highway approaching the tracks if they had listened with reasonable care; that the regular crossing whistle

of two long and two short blasts was given as the interurban car approached the Arlington Avenue crossing one mile east of Emerson Avenue; that it was given again for Ritter Avenue, one-half mile east, and again for Emerson Avenue, where the collision occurred; that in addition, after the statutory whistle signal was given for Emerson Avenue, the whistle was again sounded before the collision, when the interurban car was 200 or 250 feet east of the crossing. As to the speed, the jury answered that the interurban was running 50 miles an hour before the brakes were applied. With respect to the headlight, the jury found that the interurban car was equipped with a 175 candle power headlight; that it was in good repair and burning as the car approached Emerson Avenue; that persons located on Emerson Avenue near the crossing saw the headlight of the approaching car when the car was 500 to 1,000 feet east of the crossing; and that as the car approached the crossing the headlight was burning with sufficient brightness so that persons operating a motor vehicle and approaching the crossing from the south could have seen the same in time to have stopped and avoided going on to the railroad track "if they had looked." Upon the question of whether or not the lights of the interurban car were such that an object on the track in the nighttime could be seen at a distance of 600 feet ahead of the car, the jury answered: "No evidence." Upon the question of brakes, the jury answered that the interurban car was equipped with automatic air brakes, and that at the time of the accident the brakes were in good repair and capable of efficiently controlling the operation of the car. They also found that the motorman first saw a dim light on the truck and trailer when the interurban car was between 200 and 250 feet east of the crossing, and that the truck and trailer were at that time about 75 feet south of the track; that when the motorman saw

the truck he immediately applied the brakes, but that the distance was insufficient to stop the interurban car before reaching the crossing.

From the facts found by the jury, it appears beyond controversy that if the crossing could be said to have been obscured at all, it was not so obscured as to prevent a traveler, exercising ordinary care, from seeing the approach of a car in time to stop and avoid a collision. It is also clear that the plaintiff failed to establish her allegations that the appellee failed to give the statutory crossing signal, operated its car without a headlight sufficiently bright to enable travelers to see and discover the approach of an interurban car, operated its car without sufficient·brakes, failed to comply with the Public Service Commission order in respect to headlights, and operated its car at a dangerous rate of speed. It will be noted that in respect to the Public Service Commission standard for lights, the jury answered: "No evidence." The burden was upon the plaintiff to establish the allegation by evidence. The jury found that the car was operating at a speed of 50 miles an hour. It is not negligence per se to run a train over an ordinary country highway crossing at a speed of 50 miles an hour or even greater speed. *Lake Shore & M. S. Ry. Co.* v. *Barnes* (1906), 166 Ind. 7, 76 N. E. 629. "While crossings which are peculiarly hazardous by reason of an obstructed view may create a condition falling within the exceptions to such rule, such a condition cannot be said to exist if, notwithstanding such obstructed view, the traveler, in the exercise of ordinary care in looking, could have seen the approach of a car in time to stop and avoid a collision therewith." *Guion* v. *Terre Haute, I. & E. Traction Co.* (1925), 82 Ind. App. 458, 467, 143 N. E. 20, 23. It appears from the express finding of the jury that the crossing in question was not unusually obstructed; that,

on the contrary, it was perhaps less obstructed than the average crossing. But the jury found expressly that the appellant's decedent and the driver could have seen the approach of the interurban car in time to have avoided a collision therewith if they had exercised ordinary care in looking. Under such circumstances there is no actionable negligence in operating an interurban car at a rate of speed of 50 miles per hour.

We cannot avoid the conclusion that the plaintiff completely failed to prove any of the asserted acts of negligence upon the part of the appellee, and that therefore there was no basis for the general verdict. The action was for damages for the death of a man in good health, with a dependent family consisting of a wife, and three children ranging in age from five to eight years. The general verdict was for $625 damages. It seems inconceivable that the members of the jury would have agreed upon so small a verdict had they in good faith believed that the negligence of the appellee was responsible for the injury. Since the correctness of the facts specially found is not disputed, any judgment for the plaintiff would have been erroneous. It is not necessary therefore to consider the other questions sought to be presented.

Judgment affirmed.

Roll, J., absent.