## CONSTANTINE v. PENNSYLVANIA R. CO.
### No. 7158.

Circuit Court of Appeals, Seventh Circuit.
July 15, 1940.

272

F. E. Zollars and R. S. Teeple, both of Fort Wayne, Ind. (Barrett, Barrett & McNagny, of Fort Wayne, Ind., of counsel), for appellant.

Paul M. Butler, of South Bend, Ind., and Paul Reed, Wm. J. Reed and Reed & Reed, all of Knox, Ind., for appellee.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Defendant appeals from a money judgment, based upon a general verdict, in favor of plaintiff who sustained injuries when an automobile in which she was riding, driven by her mother, was struck by one of defendant's trains.

The chief reliance of defendant for its attack upon the judgment is the asserted want of evidence to support it.

The accident occurred on a clear, bright, Sunday afternoon, late in April, 1934. The traffic was somewhat heavy, the car which preceded the demolished one, being from 30 to 100 feet ahead of it. The car in which plaintiff was riding was traveling at a speed "of from 20 to 30 miles" an hour.

The plaintiff's mother and father and brother were in the car with her at the time. Her mother, who had two years' driving experience, was at the wheel. Her husband sat beside her in the front seat. Plaintiff and her brother were seated in the back seat of the car, plaintiff being on the right side. They were returning to Chicago from a visit in Indiana, and had driven

the route many times. The state road on which they were traveling north intersected defendant's two track road which ran in a general east and west direction, at not quite a right angle. Running parallel with, the whistle had been blown twice before the train reached the crossing,—first, two miles away, and later, a half mile away. No contradiction of this evidence exists save as plaintiff and her mother said they

and just beyond the tracks was a U. S. highway, for which traffic had to stop after crossing the tracks.

Defendant's right of way was elevated from the surrounding country some six or eight feet all the way to the town of Hamlet, two miles east of the crossing. To one traveling north on the state road, as was plaintiff's car, the view to the east—from which direction the train came—was unobstructed for several thousand feet, and over a mile, when a car was a few hundred feet from the crossing.

As the passenger train approached the intersection on this day it was going at a speed variously estimated at from 65 to 80 miles an hour. It was "made up" of locomotive and three cars, and was manned by an engineer, fireman, and conductor. The engineer was not living at the time of the trial, but the fireman who faced the approaching car, testified.

The evidence is conflicting (that is, there are some witnesses who said they did not hear the whistle) as to whether the train sounded its whistle before approaching the crossing—all testified the whistle was sounding at the time of the collision. The fireman stated he "yelled" to the engineer "to take hold" "we're going to hit something." Several disinterested witnesses (in addition defendant's fireman) testified that

heard no whistle. It was blowing at the time the crash occurred. The estimates as to the distances at which the whistle was blown before the collision, varied somewhat. There was a standard wooden cross arm railroad signal 450 feet from the crossing.

The plaintiff's mother, the driver of the automobile, testified that she looked but did not see the oncoming train. Her husband was killed in the crash. Plaintiff testified she did not hear the whistle, nor did she evidently see the approaching train. She did not warn her mother. She was eleven at the time of the accident, and sixteen when the case was tried.

Plaintiff's injuries were serious and permanent.

While the serious question in the case arises out of the alleged lack of evidence to sustain a finding of negligence which was the proximate cause of plaintiff's injuries, defendant also contends that the plaintiff was guilty of contributory negligence.

■ This defense is hardly worthy of consideration. To say an eleven year old girl sitting in the rear seat of an automobile is guilty of contributory negligence, as a matter of law, because she did not take more decisive and effective action to prevent her mother from driving on the track is devoid of merit where it does not even

appear that the child knew whether her mother was going on, or would stop. What she was to do to exercise the ordinary care of an eleven year old child is not even suggested by defendant's counsel. It would have been out of the ordinary for the back seat passenger, child or adult, to seize the wheel, try to apply the brakes, or leap from the car. The trial court's reasons for his rejection of defendant's motion for a directed verdict on the ground of contributory negligence were pertinent and persuasive.

■ Under the law of Indiana the negligence of the driver is not imputed to the passenger. Swanson v. Slagal, Adm'x, 212 Ind. 394, 8 N.E.2d 993; Union Traction Co. v. Gaunt, 193 Ind. 109, 135 N.E. 486; Board, etc., v. Mutchler, 137 Ind. 140, 36 N.E. 534; 2 Restatement of Law of Torts (A.L.I.), Negligence, § 488 (1934). The negligence of plaintiff's mother, if any, may not be imputed or chargeable to the plaintiff to establish the latter's contributory negligence.

Far more serious, however, are the questions of defendant's negligence and the ascertainment of the proximate cause of the injury.

That the driver of the car in this case was negligent seems too clear for serious question. Familiar with the road, and about to cross defendant's double track right-of-way with an oncoming train in plain sight, clearly visible for a mile down the track, she drove on the railroad right-of-way, in front of the train, and was struck by its engine. There is no reconciliation of such driving, with due care.

The only debatable question, if any, is the question of proximate cause. Does it conclusively appear that the driver's negligence was the proximate cause of plaintiff's injury?

■ While the driver's negligence is not imputable to a passenger, nevertheless, the defendant is not liable unless its negligence was the proximate cause of the injury. A driver's negligence may be the proximate cause of plaintiff's injury. If so, then there existed no liability on defendant's part.

Before considering the driver's negligence as the conclusively established proximate cause of plaintiff's injury, we must examine the facts upon which the negligence of defendant is based. For its negligence may prove to be the proximate cause or, at least, make the issue a question for the jury.

The alleged negligence of defendant is predicated on the following alleged facts: (a) The passenger train was running at an excessive speed, from which fact the jury might have found negligent operation. (b) The whistle was not blown 1320 feet from the crossing. (c) Failure to furnish the crossing with flasher or other warning lights. No statute of Indiana or order of the Public Utilities Commission, however, had directed defendant to place warning lights at this country crossing.

■ We are convinced that, unaccompanied by other evidence, negligence is not shown by proof that a passenger train (a "flyer"), going through open country, the view of which is unobstructed, was traveling from 70 to 80 miles per hour. The demands of the traveling public on transportation companies are such that the latter must furnish and operate passenger trains which will travel faster than freight-hauling trains; that such passenger trains may be divided into through and local passenger trains; that under favorable conditions such as here shown to exist, it was not negligence for the defendant's passenger trains to travel 65 to 80 miles per hour.

The Indiana Supreme Court, as well as this court (in a negligence case arising in Indiana) has held that the high speed of a fast passenger train traveling in the country where visibility is clear and no obstructions to the highway traveller's view exist, does not of itself establish negligence. Southern Railway Co. v. Wahl, 196 Ind. 581, 149 N.E. 72; Terre Haute I. & E. T. Co. v. Phillips, 191 Ind. 374, 132 N.E. 740; Lake Shore & M. S. R. Co. v. Barnes, 166 Ind. 7, 76 N.E. 629, 3 L.R.A.,N.S., 778; Pere Marquette v. Anderson, 29 F.2d 479. See, also, Markar v. New York, New Haven & H. R. Co., 2 Cir., 77 F.2d 282, 283; Baltimore & O. R. Co. v. Reeves, 6 Cir., 10 F.2d 329.

In Lake Shore & M. S. R. Co. v. Barnes, supra [166 Ind. 7, 76 N.E. 630, 3 L.R.A., N.S., 778], the court said:

"It was the better and faster conveyance desired by the people that inspired the building of railroads and the development of speed, and it is what they expected in return for the rights surrendered for the construction of such roads. So, when the General Assembly, with full power to regulate the speed of trains in suburban and rural districts, as well as to authorize it to

be done by the cities and towns of the state, wholly failed to exercise its power with respect to the former, the failure may be accepted as implied authority for railroad companies to run their trains in the open country, where they may be seen and heard for long distances, and over ordinary public crossings therein, at any speed they choose that is consistent with the safety of the persons and things in their charge. * * * In the open country, where trains may be seen or heard for the distances designated in the statute, a traveler who is as alert, as the law requires him to be, and who promptly heeds the signals, can hardly fail to get out, or keep out, of harm's way from a train running at any usual speed. Thus, a train running 60 miles an hour will require 15 seconds from the sounding of the whistle and ringing of the bell to reach the crossing, a long time for him who is on the crossing to drive off, and a short time for him to wait for the train to pass, who is about entering upon it. * * *

"This leads us to the conclusion that there is no act or omission charged against appellant in the second paragraph of complaint that affords a ground for recovery for negligence, and the court erred in overruling the demurrer thereto."

(b) Was the defendant's engineer negligent in failing to blow the whistle, or blowing it, too late? The evidence on this question hardly rises to the dignity of a conflict. The fact that neither the plaintiff nor the plaintiff's mother heard the whistle weighed little or nothing, in view of the situation disclosed and the unanimous testimony of other witnesses that it was blown.

■ There were two places where the blowing of the whistle was necessary. One was at a crossing two miles away and one at a signal post about 1300 feet from the crossing in question. Witnesses, some disinterested, who testified for the plaintiff generally, stated they heard both whistles. They also said another whistle was blown just before and at the time of the crash. To this effect was the testimony of the defendant's witnesses. No jury question is presented by testimony of plaintiff and her mother, who were riding in a closed car, with their minds on other matters, that they did not hear the whistle.

Counsel contend, however, that there is some conflict as to whether the second whistle was blown 1200 feet from the crossing. One witness for plaintiff testified that it was "2 or 3 city blocks away." At another time he gave an estimate of 800 to 1000 feet.

Passing the question of fact—whether the blowing of the whistle 800 to 1000 feet away—in view of plaintiff's testimony that she did not hear it, constituted negligence, and coming directly to the question of whether the evidence was sufficient to warrant a finding that the whistle was blown 1200 feet away, we are left in no state of uncertainty or doubt. The proof was overwhelming. One witness stated that he was outside a tavern visiting with some friends, and had been for a couple of hours. Automobiles came and went. He saw and witnessed the crash and went quickly to the scene of the accident. He gave his testimony approximately five years after the accident occurred, and his recollections thereof were necessarily subject to the weaknesses inevitable in the face of such passage of time. He stated that he was asked to give his impression of the speed of the train and the blowing of the whistle. In his opinion the train was running between seventy and eighty miles an hour. As to the distance at which the whistle blew, testifying for the plaintiff, he said:

"Well, I first heard the train whistle approximately one and one-half mile from this crossing * * * The next time I heard it whistle was about, oh, about two or three city blocks, approximately between 1,000 and 800 feet, I would say. * * *

"Q. Where was this train when it made that last whistle, could you locate it * * ?

"A. That would be pretty hard to do, the rate of speed the train was going."

On cross-examination:

"the distance, 1,000 feet to 800 feet was approximate. It could have been farther back."

Plaintiff relies upon the testimony of two witnesses, Hawkins and Gustafson, to raise a conflict. It is evident they spoke of the whistle at the time of the crash.

Mr. Hawkins' testimony evidences the great uncertainty which the lapse of five years engendered. He said he could not remember whether it was on Sunday the accident occurred, and was in doubt also whether it was in the morning or afternoon. He stepped out of the tavern, so he said, as the train approached the crossing. "It was between six and eight hundred feet east of the highway." "It was going pretty fast." "It would not take very long until it hit this car." "It seemed like it just,

from the time I stepped out of there, just in a couple of *minutes.*" "When I *went out the door* it had not yet whistled." "After the train got within almost straight across from the tavern * * * maybe fifty, one hundred fifty feet from the highway 29, the train whistled; some place in there; between one hundred and one—one hundred and fifty feet."

This is entirely consistent with the testimony of the fireman and other witnesses that the whistle had twice blown and then as it approached the crossing, a third continuous blast was given. It in no way contradicts the testimony of the other witnesses.

Gustafson said he had not heard the whistle and did not even heed the coming of the train until it was close to the highway; that he had not noticed the train until it was a couple of blocks from the highway and then he first heard it whistle about a block from the highway. This, too, is in harmony with the testimony of others that the engineer blew the whistle just as soon as the fireman told him of the likelihood of a crash and kept on blowing for the last 200 feet. It is not inconsistent with the other testimony to the effect that the whistle was blown at the first crossing and a second time, at the whistling post, 1200 feet from this crossing.

■ The third act of negligence is predicated on defendant's failure to place a flash signal or other traveler protection warning at this crossing. Admittedly no statute or order of the State Public Utility Commission of Indiana required the placing of such a signal. Under numerous decisions, one by this court of a case arising in Indiana, a railroad was not required to erect crossing flash signals at country crossings in the absence of statute or order of the Commission. Terre Haute, I. & E. Traction Co. v. Phillips, 191 Ind. 374, 386, 132 N.E. 740; Lake Erie R. Co. v. Molloy, 78 Ind.App. 72, 134 N.E. 913; Pittsburgh, C. C. & St. L. R. Co. v. Nichols, 78 Ind.App. 361, 130 N.E. 546; Pere Marquette R. Co. v. Anderson, 7 Cir., 29 F.2d 479.

■ We are not now, however, prepared to go so far as to hold that under no circumstances may a railroad be acquitted of negligence for failure to erect signals because of the absence of statute or order of state regulatory body. There are instances when negligence might be predicated upon such failure. We prefer to place our ruling on the ground that each case turns upon its own facts. In fact we are convinced there might be unusual cases where a railroad exercising ordinary care for the lives of the highway traveler would not only "put up" signals, but take even greater traveler protection precautions, and do so without statute or order of the Commission.

As an illustration take the case of new track or tie laying which necessitates constant travel of work trains over the crossing not customarily used so frequently. That might well require not only a crossing warning, but even a crossing guardsman. The requirement would ordinarily be in cities and villages only and seldom if ever in the country.

In the instant case the train travel over the crossing in question was not heavy—about one an hour. On the day of the accident it was normal. No extra or unexpected trains, arriving at an unusual hour, are here involved.

But more important than the question of defendant's negligence is the fact that the driver was not lured into a place of danger because of the absence of a flash warning. She was aware of the existence of this crossing. She had traveled it many times. On this day she was fully aware of it, for she said as she approached the crossing, she looked for any coming train. The absence of a signal could, therefore, not have been the cause of plaintiff's injury. It was not, under the circumstances peculiar to this case (see previous statement as to visibility, unobstructed view, signs, etc.), the basis of a finding of negligence.

Such accidents as here disclosed are indeed distressing. They demand, with ever-increasing urge, the solution of the problem of avoiding losses of life and limb occasioned by crashes between railroad trains and automobiles. They call loudly for safer (and fewer) highway railway crossings. Until underground or overhead crossings prevail, however, accidents will occur and apparently in increasing numbers. They occur only when automobiles get on the track of a railroad in front of an oncoming engine traveling either fast or slow. Responsibility for damages to life or limb later becomes the disputed subject of litigation.

Courts have a duty to perform the same as jurors. The performance of that duty is neither clear nor easy in all cases. But surely courts must not pass their respon-

sibility to the jury when there is no dispute about the facts, and the facts show a traveler driving her car onto the railroad tracks in front of an oncoming train on a clear day, with the view unobstructed and the visibility excellent.

The judgment is reversed and a new trial ordered.

TREANOR, Circuit Judge (concurring in part and dissenting in part).

I concur with that part of the opinion and decision which holds that the negligence, if any, of the driver of the automobile could not be attributed to the plaintiff; but I cannot agree with the conclusion of the majority respecting the sufficiency of the evidence. In my opinion the evidence clearly presented a case for the jury. There was clear-cut evidence offered on behalf of the plaintiff that defendant did not give the statutory warning at the required distance of 1320 feet from the crossing. The surviving occupants testified that they did not see or hear the train until at the instant of the crash. Witness Good testified that he heard the train whistle at approximately 1½ miles from the crossing at which the accident occurred; and that the next time he heard the whistle it was approximately between 1000 and 800 feet from the crossing. In answer to further questioning he stated that the space of time between the time he heard the train whistle until it hit the Constantine car was "Well, just as soon as you can say it why it hit it"; he heard it whistle and then heard the crash. He further illustrated the period of time by snapping his finger. He also testified that the train was still whistling when it hit the car. The jury reasonably could have inferred that when the train whistled it was considerably nearer the crossing than 1000 or 800 feet.

Witness Hawkins was coming out of the door of a tavern at about the time of the accident and testified that the train had not whistled when "he went out the door"; he testified that the train whistled between 100 and 150 feet from the crossing. Under cross examination he made the usual explanation that he did not hear the train whistle before the moment at which he had testified that it had whistled; and stated that he was inside the building and didn't know "what a train would do up the road." Such testimony was not a repudiation of his previous testimony.

Witness Gustafson testified that he was in the open at the time of the accident and only a very short distance from the crossing. He testified that he saw the train coming from the east and that when he first heard it whistle it was about a block from the crossing.

There were the usual conflicts and inconsistencies between the testimony of the various witnesses, and the majority opinion seems to be able to reconcile these inconsistencies and conflicts on the assumption that the statutory signals were given. It is my understanding that reconciling of testimony is a function of the jury as well as resolving of conflicts and evaluating credibility of witnesses. The trial judge heard the testimony and was in a far better position than any member of this Court to appraise the credibility of the witnesses and to decide how much of the conflicting testimony could be reconciled and to what extent some of it would have to be rejected. He sent the case to the jury and the jury found for the plaintiff. I am of the opinion that there was substantial evidence to support a finding of negligence by reason of failure to give the statutory signals.

Also, I am of the opinion that the evidence was sufficient to send the case to the jury on the question of the negligence of the defendant in driving at a speed of 80 miles an hour in view of the physical surroundings of the crossing and the traffic conditions existing at the time of the accident. The accident occurred on a Sunday afternoon and the evidence discloses that on Sunday afternoons the automobile traffic on road 29, at the point where 29 crosses the railroad, was heavy. The evidence also shows that the railroad crossed road 29 at an elevation of five to eight feet. North of the railroad and parallel to it, road 30, a through highway, intersects road 29 at a distance of about thirty feet from the railroad. The stop signal at the intersection of roads 30 and 29 was against the north bound traffic on road 29. The result was an intermittent stoppage of the north bound traffic and a backing up of cars in the thirty foot space between the railroad and road 30. This necessarily created a special hazard for cars crossing the railroad in a northerly direction since at a moment of unusually heavy traffic east and west on road 30 the automobiles on 29 might be unexpectedly stopped and backed up to and south of the railroad on 29. The elevation of the track at that point also

added an element of hazard since to some extent it would obstruct the vision of automobile drivers and prevent a clear vision of the traffic in the 30 foot zone between the railroad and road 30 until after they had reached, and would be in the act of crossing, the tracks. In view of the traffic conditions and the physical features at the crossing and north of the crossing to road 30 I do not believe that this Court can say as a matter of law that a jury could not find that driving a train at the rate of 80 miles an hour under the conditions which existed at the time of the accident constituted negligence.

The law is well settled in Indiana that "the running of a train over a crossing at high speed, or without any flagman or watchman stationed at the crossing is not negligence per se, in the absence of a statute making it so, yet such operation of a train may, in fact, constitute negligence, depending upon all the facts and circumstances surrounding the particular case." Chicago, etc., R. Co. v. Biddinger, 63 Ind. App. 30, 113 N.E. 1027, 1030. In the case of Watson v. Brady, 205 Ind. 1, 185 N.E. 516, 520, the Supreme Court of Indiana pointed out that facts "concerning the failure of the [defendant] to provide proper warning signals, bells, or gates, may be properly received and considered in determining whether appellee's operation of the train under the attending circumstances, was negligent." The opinion of the Court leaves no question that it is the law in Indiana that if a railroad company operates a car or a train over a crossing at a very high rate of speed which is so hazardous by reason of the topography and congested traffic that some special warning signal is reasonably necessary, "actionable negligence may, in such case, be alleged not only with regard to the speed at which the train was operated, but also in the manner of operating the train under the conditions surrounding the particular crossing by reason of the company's failure to install a proper warning signal." And the following statement of the Supreme Court of Indiana is pertinent to the facts of this case:

"Whenever a railroad crossing is for any reason particularly dangerous, it is not a question for the jury to decide whether or not a railroad company should provide signaling and safety devices at any particular crossing, but the jury may consider the fact that there were no devices or watchmen together with all the other circumstances surrounding the crossing such as the near situation of houses, trees, vegetation, and the like, and the frequency with which travelers pass over the crossing in order to determine whether or not the operation of the car in the manner and at the speed that it was operated, was negligent."

The District Court embodied in its instructions the foregoing rules of law and left to the jury as a fact question whether or not under all the circumstances, including the fact of the absence of any special signals, it was negligence for the defendant to run its trains at a speed of 70 or 80 miles an hour over the crossing in question. I believe that the trial court correctly applied the law of Indiana to the facts of the case. In my opinion the judgment of the District Court should be affirmed.